*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0161P (6th Cir.)
File Name: 04a0161p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

KURT RENFRO; WILLIAM
SOUTHWORTH; RICHARD
PETERSON; JAMES FITCHUK,
individually and as Class
Representatives on behalf of
other persons similarly
situated,
     *Plaintiffs-Appellants,*

     *v.*

INDIANA MICHIGAN POWER
COMPANY, d/b/a American
Electric Power,
     *Defendant-Appellee.*

No. 02-2342

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 99-00877—Wendell A. Miles, District Judge.

Argued: February 4, 2004

Decided and Filed: June 2, 2004

Before: BATCHELDER, GIBBONS, and COOK, Circuit
Judges.

---

---

## COUNSEL

**ARGUED:** Stephen D. Turner, LAW, WEATHERS & RICHARDSON, Grand Rapids, Michigan, for Appellants. Joseph J. Vogan, VARNUM, RIDDERING, SCHMIDT & HOWLETT, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Stephen D. Turner, Gregory N. Longworth, LAW, WEATHERS & RICHARDSON, Grand Rapids, Michigan, for Appellants. Joseph J. Vogan, Peter A. Smit, VARNUM, RIDDERING, SCHMIDT & HOWLETT, Grand Rapids, Michigan, for Appellee.

---

## OPINION

---

COOK, Circuit Judge. Plaintiffs-Appellants Kurt Renfro and Richard Peterson, on behalf of themselves and other similarly situated persons, appeal the district court's grant of summary judgment in favor of their employer, Indiana Michigan Power Company d/b/a American Electric Power (AEP), and denial of their motion for summary judgment on their claims that AEP failed to pay overtime wages in violation of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219 (2000). Because AEP properly treated plaintiffs as administratively exempt from the FLSA's overtime requirement, we affirm the district court's judgment.

I

Indiana Michigan Power Company, doing business as AEP, operates several power-generating facilities, including the Cook Nuclear Plant in Bridgman, Michigan, where the plaintiffs worked as "planners." According to plaintiffs, planners "take job orders that identify work (maintenance or new construction) and prepare work packages that the plant's

craft workers use to perform the work in the field." (Appellants' Br. at 6.) In creating work packages, planners determine which plant procedures apply to the particular repairs and identify any permits necessary to allow the repairs.

During some workweeks, plaintiffs (the planners) work more than forty hours, but AEP does not pay them time-and-a-half for the overtime. Under section 7(a) of the FLSA, non-exempt employees are entitled to this additional compensation for overtime work. 29 U.S.C. § 207(a)(1). Section 13(a) sets forth an exception from the Act's overtime requirement for any salaried employee who works in a bona fide administrative or executive capacity. 29 U.S.C. § 213(a)(1). AEP classified the planners as administrative employees, making them ineligible under section 13(a) for overtime compensation. The planners, disagreeing with AEP's classification, filed this suit seeking damages, attorneys' fees, and an injunction requiring AEP to comply with the FLSA's overtime compensation provisions. The district court found that the planners meet the FLSA criteria for exempt administrative employees and therefore granted summary judgment to AEP and denied the planners' motion for summary judgment.

## II

This court reviews de novo the district court's grant of summary judgment to AEP and denial of summary judgment to the planners, *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999), applying the axiomatic standard from *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and *Anderson v. Liberty Lobby,* 477 U.S. 242, 251 (1986).

### A. Burden of Proof

In determining whether a FLSA exemption applies to the planners, we narrowly construe the exemption against AEP, *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960),

placing on AEP the burden of proving that the administrative employee exemption applies to the planners, *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997). AEP must establish each element of the exemption by a preponderance of the clear and affirmative evidence. *Ale v. Tennessee Valley Auth.*, 269 F.3d 680, 691 n.4 (6th Cir. 2001).

### B. The Administrative Employee Exemption

To demonstrate that the planners are bona fide administrative employees under the applicable Department of Labor regulations (described as the short test), AEP must demonstrate (1) that it pays the planners at least $250 per week on a salary or fee basis; (2) that the planners' primary duty consists of office or nonmanual work directly related to AEP's management policies or general business operations; and (3) that the planners' primary duty requires them to exercise discretion and independent judgment. 29 C.F.R. §§ 541.2(a)(1), 541.2(e)(2); *see, e.g., Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 400 (6th Cir. 2004); *Ale*, 269 F.3d at 683–85.

#### 1. Salary Basis

An employee is paid on a "salary basis" if the employee "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). Such an employee "must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked," subject to certain exceptions. *Id.*

Although the planners concede that they receive at least $250 per week, they argue that they cannot be exempt even though salaried because AEP requires them to account for at least 40 hours of work each week and to make up for partial-day absence either by working extra hours or by taking

vacation time or paid time off. An employer may require exempt salaried employees to make up for time missed from work due to personal business. It is only when an employer actually deducts from an employee's paycheck that the employee is ineligible for the exemption. *See, e.g., Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 265–66 (5th Cir. 2000) (finding that employees who were required to make up personal time off and suffered no salary deductions for the lost time were paid on a salary basis); *Haywood v. North Amer. Van Lines, Inc.*, 121 F.3d 1066, 1070 (7th Cir. 1997) (holding that the regulations prohibit only monetary discipline of exempt employees). Because the planners concede that AEP has not docked their salaries for missed time from work, their argument in this regard fails.

The planners also argue that they are not salaried employees because AEP controls their work schedules and does not permit them to come and go as they please. These criteria, however, play no part in defining salaried employees. *See* 29 C.F.R. § 541.118(a).

Accordingly, the district court correctly determined that AEP demonstrated that the planners were paid on a salary basis.

## 2. Nonmanual Work Directly Related to General Business Operations

AEP must next show that the planners' primary duty consists of (1) office or nonmanual work, (2) directly related to management policies or general business operations, (3) that is of "substantial importance" to the management or operation of AEP's business. 29 C.F.R. §§ 541.2(a)(1), 541.205(a). The parties do not dispute that the planners' primary duty involves preparing work repair packages.

### a. Office or Nonmanual Work

Although the planners concede that they perform much of their work at a desk, they claim that they perform so much manual work through the "field walk-downs" (used to assess repair projects) that they cannot be considered white-collar employees. Performing some manual work does not automatically remove an employee from exempt status so long as the manual work is "directly and closely related to the work requiring the exercise of discretion and independent judgment . . . ." 29 C.F.R. § 541.203(b). If, however, the planners perform "so much manual work (other than office work) that [they] cannot be said to be basically 'white-collar' employee[s]," then they are not exempt administrative employees. *Id.*

The evidence, viewed in the light most favorable to the planners, does not support their contention. The planners admitted at their depositions that they performed most of their work at their desks; they generally described their duties as office-based, rather than manual. Additionally, the field walk-downs—performed as part of the planners' preparation of work repair packages—are "directly and closely related to the [planners'] work requiring the exercise of discretion and independent judgment," supporting exemption from the FLSA. 29 C.F.R. § 541.203(b).

The planners further argue that because certain planners worked without overtime pay removing ice at the Cook plant for a month or two in 1998, the planners cannot be considered nonmanual workers. Exempt employees' status under the FLSA does not change merely because they perform some nonexempt work. *See, e.g., Counts v. South Carolina Elec. & Gas Co.*, 317 F.3d 453 (4th Cir. 2003) (holding that because the language and structure of the FLSA call for a "holistic approach" to determining employees' primary duties, the court need not engage in a "day by day scrutiny" of the tasks of administrative employees). The ice removal project does not concern the planners' primary duty ("the

major part, or over 50 percent, of the employee's time," 29 C.F.R. § 541.103), nor does performing this manual labor preclude the planners from otherwise meeting the exemption.

### b. Directly Related to Management Policies or General Business Operations

AEP must also demonstrate that the planners' primary duty is "directly related to management policies or general business operations." 29 C.F.R. § 541.2(a)(1). According to the regulations, work "directly related to management policies or general business operations" must involve "the administrative operations of a business as distinguished from 'production.'" 29 C.F.R. § 541.205(a). Work concerning the "administrative operations" of a business includes "work performed by so-called white-collar employees engaged in 'servicing' a business, as for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." 29 C.F.R. § 541.205(b). The planners maintain that their work is not administrative but rather, "a maintenance function best categorized as production." (Appellants' Br. at 45.)

Under the administrative/production dichotomy analysis, the job of "production" employees "is to generate (i.e. 'produce') the very product or service that the employer's business offers to the public." *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 9 (1st Cir. 1997). When employees engage in work that is "ancillary to an employer's principal production activity," those employees are administrative. *Martin v. Cooper Elec. Supp. Co.*, 940 F.2d 896, 904 (3d Cir. 1991). This analysis, however, "is only useful to the extent that it is a helpful analogy in the case at hand." *Schaefer*, 358 F.3d at 402–03. AEP's principal production activity is generating electricity, and the product it offers the public is electricity; the planners' primary duty—creating plans for maintaining equipment and systems in the nuclear plant—is

ancillary to AEP's principal production activity of generating electricity. While not precisely "administrative," the planners' duties form the type of "servicing" ("advising the management, planning," etc.) that the FLSA deems administrative work directly related to AEP's general business operations. 29 C.F.R. § 541.205(b); *see, e.g., Cowart*, 213 F.3d 261 (finding that employees responsible for planning production work requirements in a shipyard performed administrative work).

### c. Work of Substantial Importance

The planners claim that their primary duty is not of "substantial importance to the management or operation of [AEP's] business" because their work is standardized and because it does not involve setting company policy or performing major assignments affecting AEP's business operations. 29 C.F.R. § 541.205(a).

According to the Department of Labor regulations, the category of employees whose work is of substantial importance includes, but is not limited to, those "whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business." 29 C.F.R. § 541.205(c). This does not include "routine clerical duties" or even operating expensive equipment or activities that, if improperly performed, would cause loss to an employer. 29 C.F.R. § 541.205(c)(2).

The planners' primary duty can only be viewed as substantially important to AEP's operations. Their work—interpreting and carrying out plant policies, creating plans that permit the continued operation of the equipment and systems that generate AEP's main product—affects AEP's general business operations to a substantial degree. *See, e.g., Haywood*, 121 F.3d at 1072 (holding that employee's work, while not involving the principal service of the employer, was nevertheless "important to the success of

the firm" and therefore exempt). Moreover, the planners themselves testified that their work is crucial to keeping the Cook plant in compliance with its licensing requirements. And although their work may involve some routine clerical tasks, the planners' primary duty is not clerical in nature. *See* Part II.B.3. *infra.*

In sum, the planners have failed to produce evidence indicating the existence of a genuine issue as to whether their primary duty consists of nonmanual work that affects AEP business operations to a significant degree and is therefore of substantial importance to the operation of AEP's business.

### 3. Discretion and Independent Judgment

Finally, AEP must show that the planners' primary duty requires "the exercise of discretion and independent judgment." 29 C.F.R. § 541.2(e)(2). The planners claim that they do not exercise discretion and independent judgment because AEP's procedures and other guidelines standardize and narrowly circumscribe their work such that the planners make no independent choices when generating repair work packages.

"Discretion and independent judgment" generally means "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a). This process implies "that the person has the authority or power to make an independent choice, free from immediate direction or supervision, and with respect to matters of significance." *Id.* (This is distinct from "[a]n employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow." 29 C.F.R. § 541.207(c)(1).) Additionally, the regulations require exempt administrative employees to exercise discretion and independent judgment "customarily and regularly." 29 C.F.R. § 541.207(g) (stating that the phrase signifies "a frequency which must be greater than occasional

but which, of course, may be less than constant"); *see also Schaefer*, 358 F.3d at 403–04; *Douglas*, 113 F.3d at 72.

We disagree with the planners' argument that the heavily-regulated nature of their primary job duty prohibits their exercise of discretion and independent judgment. While "[t]he very purpose of such detailed regulations and procedures is to create conformity which has the practical effect of minimizing discretion," we nevertheless examine whether the planners, constrained by regulations, actually exercise discretion and independent judgment. *Schaefer*, 358 F.3d at 404.

The process of generating repair work packages is neither wholly mechanical nor restricted to "merely appl[ying] knowledge in following prescribed procedures." 29 C.F.R. § 541.207(c)(1). When there is no procedure that can be applied to a particular task, the planners independently determine the nature of the repair task and prepare a repair plan. In those situations, planners use their own skill, experience, judgment, and discretion in formulating a repair solution. Additionally, the planners exercise independent decisionmaking when choosing among various options to remedy a problem—for example, determining whether to replace or repair equipment. The deposition evidence demonstrates that the planners make such independent decisions and exercise judgment on a daily basis.

Because the summary judgment evidence shows the planners' primary duty of problem-solving requires them to exercise discretion and independent judgment customarily and regularly, we conclude that the planners have failed to produce evidence indicating a factual dispute with respect to whether their primary duty required the exercise of discretion and independent judgment. *See, e.g., Reich*, 126 F.3d at 14 (finding that despite extensive training in sales techniques, sales representatives still exercised discretion and independent judgment in applying the techniques to particular clients).

### III

For the foregoing reasons, we affirm the district court's judgment.