*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0158p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MERIDIA PRODUCTS LIABILITY LITIGATION, Steering
Committee, et al.,

                     *Plaintiffs-Appellants,*

     *v.*

ABBOTT LABORATORIES, et al.,

                     *Defendants-Appellees.*

No. 04-4175

---

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 02-08000—James Gwin, District Judge.

Argued: March 14, 2006

Decided and Filed: May 11, 2006

Before: COLE, GILMAN, and FRIEDMAN, Circuit Judges.[*]

---

**COUNSEL**

**ARGUED:** Paul M. De Marco, WAITE, SCHNEIDER, BAYLESS & CHESLEY, Cincinnati, Ohio, for Appellants. David M. Bernick, KIRKLAND & ELLIS, Chicago, Illinois, for Appellees. **ON BRIEF:** Paul M. De Marco, Stanley M. Chesley, Louise M. Roselle, Jean M. Geoppinger, WAITE, SCHNEIDER, BAYLESS & CHESLEY, Cincinnati, Ohio, for Appellants. David M. Bernick, Christopher M.R. Turner, KIRKLAND & ELLIS, Chicago, Illinois, Christopher Landau, KIRKLAND & ELLIS, Washington, D.C., for Appellees.

---

**OPINION**

---

     R. GUY COLE, JR., Circuit Judge. In this multi-district product liability case, Plaintiffs-Appellants—certain current and past consumers of the diet-drug Meridia, whose actions were transferred to, or originated in, the Northern District of Ohio—appeal the district court's grant of summary judgment in favor of Defendants-Appellees, the pharmaceutical company that marketed and distributed Meridia and its affiliates. Plaintiffs argue on appeal that the district court (1) failed to conduct a meaningful choice-of-law analysis, (2) erred in partly excluding the testimony of one

---

     [*]The Honorable Daniel M. Friedman, Senior Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

of Plaintiffs' experts, and (3) erred in granting summary judgment to Defendants as to Plaintiffs' various common law and statutory claims. For the reasons that follow, we **AFFIRM** the district court's grant of summary judgment.

## I.

This litigation was occasioned by the diet-drug Meridia. First developed in 1980 as an anti-depressant by Boots Pharmaceuticals, Meridia works by slowing the body's dissipation of serotonin and norepinephrine, brain chemicals that affect satiety and impulse control. Meridia originally failed to gain Food and Drug Administration ("FDA") approval. In 1990, the rights to Meridia were purchased by Knoll Pharmaceuticals, which began to test the drug's potential to effectuate weight loss. In 1997, the FDA approved the marketing and sale of Meridia as a prescription diet-drug, which Knoll began to market in 1998. In 2001, Abbott Laboratories ("Abbott Labs") acquired Knoll. Abbott Labs now markets Meridia to doctors, pharmacies, and directly to consumers.

On March 19, 2002, a consumer watchdog group petitioned the FDA to remove Meridia from the market, alleging the drug to be ineffective and unsafe. In the wake of that petition, plaintiffs across the United States brought suit against Abbott Labs. Although peripheral to the present appeal, these plaintiffs also sued the doctors who prescribed Meridia and the pharmacies that sold it. The plaintiffs claimed to have incurred various injuries—e.g., heart attack, stroke, tachycardia, palpitations, chest pain, high blood pressure, and death—and claimed that Meridia is ineffective. The plaintiffs also claimed that they were at increased risk of developing a future injury. Some of the claims were filed originally in federal court, and Abbott Labs, which is an Illinois company, removed many of the state court claims on the ground of diversity.

In August of 2002, with the approval of the litigants, the Judicial Panel on Multi-District Litigation ("MDL Panel") transferred the pending federal cases to the United States District Court for the Northern District of Ohio, pursuant to 28 U.S.C. § 1407. In all, nearly 100 Meridia actions from 18 states[1] were consolidated and assigned to the Honorable James S. Gwin. Following pretrial proceedings and discovery, Plaintiffs filed a Master Class Action Complaint ("MCA Complaint") and a Motion for Class Certification. The MCA Complaint alleged nine grounds for relief: (1) strict liability, (2) negligence, (3) negligence *per se*, (4) violation of statutory consumer protection, (5) unjust enrichment, (6) medical monitoring, (7) breach of express warranty, (8) breach of implied warrant, and (9) "corporate responsibility." Plaintiffs requested compensatory damages, punitive damages, attorneys' fees, and "such other or further . . . relief as may be appropriate under the circumstances."

Abbott Labs filed various motions in response. First, it filed a motion to exclude all of Plaintiffs' expert witnesses. Second, it filed a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56(c), with respect to all claims. Third, it filed a memorandum in opposition to Plaintiffs' motion for class certification. The district court denied Abbott Labs's motion to exclude Plaintiffs' experts, except that it granted in part Abbott Labs's motion with respect to Arnold Schwartz, Ph.D.—as a pharmacologist, Dr. Schwartz was not permitted to testify as to the physiological effects of high blood pressure. The court granted Abbott Labs's motion for summary judgment with respect to all issues. *See In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791 (N.D. Ohio 2004).

---

[1]These states are: Alabama, Arizona, Arkansas, California, Illinois, Indiana, Kentucky, Louisiana, Minnesota, Missouri, Nebraska, Nevada, New Jersey, Ohio, Pennsylvania, Tennessee, Texas, and Wisconsin. No plaintiff was actually from Illinois, where Abbott Labs is incorporated. Rather, residents of Indiana and Pennsylvania filed suit in the Northern District of Illinois. *See Cardwell v. Abbott Labs., et al*, No. 1:02-cv-02183 (N.D. Ill. Aug. 15, 2002).

The court declined to rule on Plaintiffs' motion for class certification. *See Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 616 (6th Cir. 2002) ("We have consistently held that a district court is not required to rule on a motion for class certification before ruling on the merits of the case."); *Jibson v. Mich. Educ. Ass'n-NEA*, 30 F.3d 723, 734 (6th Cir. 1994); *Marx v. Centran Corp.*, 747 F.2d 1536, 1552 (6th Cir. 1984). Rather, "the Court granted the Pharmaceutical Defendants' motion for summary judgment, thereby dismissing all of the claims against Defendants Abbott Laboratories, Abbott Laboratories International Co., Abbott Laboratories, Inc., and Knoll Pharmaceuticals Co." This timely appeal followed.

## II.

Nearly 100 actions from 18 states were transferred to one district, pursuant to 28 U.S.C. § 1407(a), for the purpose of conducting consolidated pretrial proceedings. Plaintiffs argue on appeal that the district court failed to conduct a meaningful choice-of-law review before granting summary judgment in favor of Abbott Labs, and that this case must therefore be remanded. We disagree.

Plaintiffs cite to *Van Dusen v. Barrack*, 376 U.S. 612 (1964), for the general proposition that "the transferee district court must be obliged to apply the state law that would have been applied if there had been no change of venue." *Id.* at 618; *see also Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990). Plaintiffs cite to a variety of extra-circuit cases, *e.g.*, *In re Air Disaster at Ramstein Air Base, Germany*, 81 F.3d 570, 576 (5th Cir. 1996); *In re Air Crash Disaster Near Chicago, Ill.*, 644 F.2d 594, 610 (7th Cir. 1981), as examples of Multi-District Litigation ("MDL") proceedings wherein the transferee district court analyzed each claim according to the choice-of-law rules or substantive law of the individual claimant's state.

Typically, we review a district court's choice-of-law analysis *de novo*. *See Power-Tek Solutions Servs., LLC v. Techlink, Inc.*, 403 F.3d 353, 354 (6th Cir. 2005). However, where a party did not raise a choice-of-law argument in district court, it may not do so on appeal. *See Mich. Chem. Corp. v. Am. Home Assurance Co.*, 728 F.2d 374, 377 (6th Cir. 1984). In this case, not only did Plaintiffs fail to challenge the court's choice of law, Plaintiffs affirmatively argued that the court need not engage in a choice-of-law analysis to resolve Defendants' motion for summary judgment. In fact, in applying generally applicable statements of law to Plaintiffs' claims, the district court relied on a case, *In re TMJ Prods. Liab. Litig.*, 113 F.3d 1484, 1488-89 (8th Cir. 1997), which Plaintiffs brought to the court's attention.

In the course of fashioning the applicable conclusions of law, moreover, the district court consistently erred on the side of caution. For instance, acknowledging a conflict among jurisdictions, the court "presume[d] for purposes of this case that advertisements are sufficient to create express warranties." *In re Meridia*, 328 F. Supp. 2d at 818. Similarly, rather than inquire into whether any state requires expert testimony as to causation, the court "assume[d] *arguendo* that no states' laws erect such a requirement." *Id.* at 802.

Plaintiffs did argue before the district court that the learned intermediary doctrine—which shields drug manufacturers from liability when a properly informed professional administers their product—should not apply to the New Jersey plaintiffs. To the extent that New Jersey law applies to any participant in this litigation, Plaintiffs' argument is correct. In *Perez v. Wyeth Lab., Inc.*, 734 A.2d 1245 (N.J. 1999), the Supreme Court of New Jersey held that the learned intermediary doctrine did not apply where, as here, the product was marketed directly to the consumer. *Id.* at 1256 ("Consumer-directed advertising of pharmaceuticals . . . belies each of the premises on which the learned intermediary doctrine rests."). For the reasons articulated in Part III.A, however, the application of New Jersey substantive law would still have resulted in summary judgment for Abbott Labs. *Cf. Barron v. Ford Motor Co.*, 965 F.2d 195, 197 (7th Cir. 1992) ("[B]efore entangling itself

in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws.").

In short, because Plaintiffs waived the argument, no basis exists for us to remand this case to the district court for an individualized choice-of-law analysis.

## III.

Although the heart of Plaintiffs' challenge on appeal is that the district court failed to conduct a meaningful choice-of-law analysis, Plaintiffs also argue that the court erred in its application of the summary judgment standard, and in partially excluding the testimony of one of Plaintiffs' experts. These challenges to the district court's decision fail.

## A.

We review a district court's grant of summary judgment *de novo*. *Miles v. Kohli & Kaliher Assocs., Ltd.*, 917 F.2d 235, 241 (6th Cir. 1990). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We "must view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party." *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 157 (6th Cir. 2004). Ultimately, there must be evidence upon which a reasonable jury could find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

As an initial matter, we find no fault with the district court's treatment of the causation factor, which is an element common to the bulk of Plaintiffs' claims. Plaintiffs argued on summary judgment, *inter alia*, that Meridia's warning label constitutes an admission that Meridia can cause injury. The district court agreed. The court first concluded that neither epidemiological nor expert evidence is necessary to a finding of causation. *Cf.* Restatement (Second) of Torts § 7 (Comment B); *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 596-97 (1993). The court then examined the product information that Defendant provides to physicians. Among other things, the information contains a fact sheet with the following warning: "MERIDIA SUBSTANTIALLY INCREASES BLOOD PRESSURE IN SOME PATIENTS." The district court construed this warning as an admission. The court contrasted the strong language of "substantially increases" with milder warning language such as "is associated with." Accordingly, the district court found that it could not grant summary judgment on the issue of causation.

Abbott Labs invites this Court on appeal to hold that an FDA-required warning label can never create a triable issue of fact with respect to causation. This is so, Abbott Labs argues, because a regulatory agency's threshold of proof is lower than that appropriate in tort law, *see Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 198 (5th Cir. 1996) (explaining that agencies employ a "weight of evidence" standard, whereas plaintiffs must prove causation by a preponderance), and because the FDA's own rules do not require a proven causal relationship before requiring a warning, *see* 21 C.F.R. § 201.57(e) (2005). Yet these arguments assume that the district court relied on *the fact of* the warning to find causation. The district court relied instead on the specific wording, *see In re Meridia*, 328 F. Supp. 2d at 810, which was, according to several record depositions, the product of discussion between the FDA and the regulated party. Thus, we are unwilling to hold that an FDA mandated warning label can never constitute evidence of causation sufficient to create an issue of triable fact.

That said, the strong wording of the label undermines Plaintiffs' claim that Meridia's warning was inadequate. The district court began its discussion of adequacy by noting that the vast majority of jurisdictions—45 out of 50 states—apply the learned intermediary doctrine to product

liability claims. *Id.* at 812 n.18 (citing *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 853 (10th Cir. 2003)). According to this doctrine, adequacy in the context of prescription drugs is a function of whether the doctor, rather than the patient, would reasonably understand the risks. As the Tenth Circuit stated:

> Physicians become learned intermediaries only when they have received adequate warnings from the drug manufacturer. Although the adequacy of warnings concerning drugs is generally a question of fact, it can "become a question of law where the warning is accurate, clear and unambiguous." An adequate warning of an unapparent risk is one that is reasonable under the circumstances.

*Thom,* 353 F.3d at 853 (citations omitted).

The district court found that Meridia's label, which states, *inter alia*, that "MERIDIA SUBSTANTIALLY INCREASES BLOOD PRESSURE IN SOME PATIENTS" and that "REGULAR MONITORING OF BLOOD PRESSURE IS REQUIRED WHEN PRESCRIBING MERIDIA," was adequate, in this case, to warn the learned intermediary. We agree with the district court that "[p]hysicians are well aware of the scope of the risks associated with increased blood pressure and do not need specifics regarding the possible consequences of blood pressure increases." *In re Meridia*, 328 F. Supp. 2d at 813. Our review of the record, moreover, reveals a dearth of evidence to the contrary. Accordingly, the district court did not err in its finding that the label is accurate, clear, and unambiguous as to the possible effects of Meridia on blood pressure.

Under New Jersey law, the learned intermediary doctrine does not apply to drugs marketed directly to consumers. The district court found that even absent the doctrine, Meridia's label was adequate as a matter of law. More importantly, however, the New Jersey Supreme Court has held that the approval of a warning label by the FDA creates a presumption of adequacy. *Perez*, 734 A.2d at 1259. Though technically rebuttable, "[f]or all practical purposes, absent deliberate concealment or nondisclosure of after-acquired knowledge of harmful effects, compliance with FDA standards should be virtually dispositive of such claims." *Id.* Plaintiffs make no attempt to rebut this presumption, and the record does not reveal concealment or nondisclosure.

Plaintiffs also allege that the warning label for Meridia's European equivalent contains more detailed instructions for the treating physician. Citing no authority, Plaintiffs argue that the difference in instructions creates a triable issue of fact. We disagree. American regulators have different priorities and deal with often more diverse populations than their European counterparts. The issue is whether the United States label—which instructs, for instance, that when a patient "has not lost at least 4 pounds in the first 4 weeks of treatment, the physician should consider a reevaluation of therapy"—provides adequate instructions upon which a physician may safely base her treatment strategy. Plaintiffs have failed to make a showing of inadequacy such that a reasonable jury could find for the nonmoving party.

Finally, Plaintiffs devote less than a page of their brief to a global challenge to the district court's opinion: Plaintiffs maintain that "[t]he district court's opinion is marked throughout by a pervasive failure to consider all of the evidence and to construe it in the light most favorable to plaintiffs." Although a district court has this obligation, *see Birch*, 392 F.3d at 157, Plaintiffs' argument is inadequately developed. *Cf. McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."). Furthermore, the record does not support Plaintiffs' claim.

**B.**

In the course of granting summary judgment in favor of Abbott Labs, the district court excluded as inexpert part of the testimony of Arnold Schwartz, Ph.D., an indisputably qualified pharmacologist. Specifically, the court would not permit Dr. Schwartz's to testify on the health effects of heightened blood pressure, or to testify that Meridia's health risks outweigh its benefits. We review the exclusion of expert testimony for abuse of discretion, *see Kumho Tire. Co. v. Carmichael*, 526 U.S. 137, 152-53 (1999), even when the exclusion results in the entry of summary judgment for the opposing party, *see Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 248 (6th Cir. 2001).

As the Supreme Court explained in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, district courts act as gatekeepers to ensure that "any scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. The *Daubert* Court identified a non-exhaustive list of factors to guide the district court's decision. For instance, the court may consider whether a theory has gained general acceptance by the scientific community. *Id.* The court may also consider whether an expert's conclusion follows from her premises. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); Fed. R. Evid. 702 (Advisory Committee Notes). Ultimately, the district court has "considerable leeway" in making these sorts of determinations. *Kumho Tire. Co.*, 526 U.S. at 152.

In this case, the district court found that Dr. Schwartz is a qualified pharmacologist, with an attendant expertise on the effects of drugs on the body. Accordingly, the court admitted his testimony as to what Meridia does: *inter alia*, it temporarily elevates blood pressure in some patients. The court found, however, that Dr. Schwartz is not an expert on the effects of high blood pressure on the human body. Dr. Schwartz testified that Meridia may increase blood pressure, and that this increase poses a risk to heart health that outweighs any corresponding cardiac benefit of weight loss. In excluding that testimony, the court noted that Dr. Schwartz is not a cardiologist, and that he "shows no training or experience allowing him to answer this question." Moreover, the court found that Dr. Schwartz's opinions on this subject lacked foundation and left the court "to rely solely on his subjective judgments." *In re Meridia*, 328 F. Supp. 2d at 806.

In short, the district court did not abuse its discretion; the court faithfully articulated and applied the relevant factors in partially excluding Dr. Schwartz's testimony.

**IV.**

The district court's order dismissed "all of the claims against Defendants Abbott Laboratories, Abbott Laboratories International Co., Abbott Laboratories, Inc., and Knoll Pharmaceuticals Co." In their Master Class Action Complaint, Plaintiffs selected nine individuals from the many lawsuits transferred to the Northern District of Ohio by the MDL Panel to serve as named plaintiffs for what they hoped would be a nationwide class. Plaintiffs urge this Court to hold that, because the district court declined to rule on their motion for class certification, only these nine named plaintiffs are bound by the district court's opinion.

Courts have held that summary adjudication prior to class certification binds only the named plaintiffs. *See, e.g., Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984). Yet Plaintiffs offer no authority for the proposition that where, as here, hundreds of named litigants and certified classes are consolidated by an MDL Panel, a party may limit the effect of a consolidated order merely by filing a new complaint. In dismissing "all of [Plaintiffs'] claims," it is clear that the district court intended to bind all litigants within its purview, i.e., any named litigant or previously certified class before it. Plaintiffs acknowledge as much by appealing and arguing on behalf of these litigants.

**V.**

For the preceding reasons, we **AFFIRM** the district court's grant of summary judgment.