*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0267p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

KURT RENFRO; WILLIAM SOUTHWORTH; RICHARD
PETERSON; JAMES FITCHUK, individually and as
Class Representatives on behalf of other persons
similarly situated,

*Plaintiffs-Appellees,*

*v.*

INDIANA MICHIGAN POWER COMPANY, d/b/a
American Electric Power,

*Defendant-Appellant.*

No. 06-1935

>

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 99-00877—Wendell A. Miles, District Judge.

Argued: April 17, 2007

Decided and Filed: July 18, 2007

Before: ROGERS and COOK, Circuit Judges; and O'MALLEY, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Joseph J. Vogan, VARNUM, RIDDERING, SCHMIDT & HOWLETT, Grand Rapids, Michigan, for Appellant. Stephen D. Turner, CLARK HILL, Grand Rapids, Michigan, for Appellees. **ON BRIEF:** Joseph J. Vogan, Peter A. Smit, Elizabeth Wells Skaggs, VARNUM, RIDDERING, SCHMIDT & HOWLETT, Grand Rapids, Michigan, for Appellant. Stephen D. Turner, Gregory N. Longworth, CLARK HILL, Grand Rapids, Michigan, for Appellees.

COOK, J., delivered the opinion of the court, in which ROGERS, J., joined. O'MALLEY, D. J. (p. 6), delivered a separate dissenting opinion.

---

**OPINION**

---

[*]The Honorable Kathleen McDonald O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

COOK, Circuit Judge. This case requires us to consider for the second time whether certain American Electric Power (AEP) employees are exempt from the Fair Labor Standards Act's (FLSA) overtime regulations. In *Renfro v. Ind. Mich. Power Co.* (*Renfro I*), 370 F.3d 512 (6th Cir. 2004), we held that the regulations did not apply to AEP planners. Applying the same analysis to AEP's technical writers, we conclude that they too are exempt from overtime regulations. We reverse and remand with instructions to enter summary judgment in favor of AEP.

I

AEP operates several nuclear power plants, including the Cook Plant in Bridgman, Michigan, where the plaintiffs are employed. Technical writers support the plant's maintenance department by developing written procedures on how to maintain equipment. They create new procedures, change existing procedures as needed, and review plant documents for their impact on established procedures. In these and other responsibilities, the technical writers work without constant supervision, and their assignments are not doled out step-by-step by their supervisors.

Prior to drafting a procedure—a technical writer's primary role—she first consults numerous sources, including vendor manuals, technical specifications, EPRI guides, INPO operating experiences, NCR bulletins, industry standards, and colleagues in other departments (mainly engineering), to determine how to maintain a particular piece of equipment. The writer compares different ways to address a problem and chooses one based upon her assessment of the available information. When confronted with a novel maintenance obstacle, a writer determines how best to remove that obstacle and memorializes her proposed solution into a draft procedure, which is peer reviewed by another department.

The writer then writes a procedure incorporating her solution and has wide latitude to determine how to do so. If someone from another department within the plant believes a procedure is needed, or believes changes are needed to an existing procedure, that person addresses the technical writer directly. Should the writer determine that the change is appropriate, she may implement it into the existing procedures without approval from her supervisor.

The technical writers also work without direct supervision in drafting a new procedure. AEP has, however, developed a manual on procedure writing. It explains the purpose of the different types of procedures, provides definitions and abbreviations for various technical terms, outlines and explains the structure of each type of procedure, prescribes format and style, and dictates the sequence of certain sections. Attached to the manual is a writing guide that provides basic grammar instruction and explains AEP's standard template for page layout and numbering. The manual does not, though, restrict a technical writer's discretion to determine the level of detail a procedure needs.

The technical writers were once paid for overtime (as a bonus) despite being classified as exempt. After the Cook Plant went through a restructuring and a shutdown, AEP stopped paying the writers overtime, and the writers brought this suit. AEP and the writers cross-moved for summary judgment on the issue of whether the writers were properly classified as exempt. The district court denied AEP's motion and granted the writers' motion, holding that the writers do not exercise sufficient discretion and independent judgment to qualify as exempt under FLSA regulations. After a bench trial, the district court further ruled that AEP was not entitled to the good-faith defense and awarded the writers liquidated damages. AEP appealed the denial of summary judgment and the trial court's judgment on the good-faith defense.

II

A

We review de novo a district court's disposition of a motion for summary judgment. *See, e.g.*, *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003). "Summary judgment is appropriate if, after examining the record and drawing all inferences in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 578 (6th Cir. 2004) (citing Fed. R. Civ. P. 56(c)).

We narrowly construe against AEP the administrative employee exemption[1] as applied to the technical writers. *See Renfro I*, 370 F.3d at 515 (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). In *Renfro I*, we required AEP to "establish each element of the exemption by a preponderance of the clear and affirmative evidence." *Id.* (citing *Ale v. TVA*, 269 F.3d 680, 691 n.4 (6th Cir. 2001)). Two panels of this court have questioned the meaning of the phrase "clear and affirmative evidence." *See Acs v. Detroit Edison Co.*, 444 F.3d 763, 767 (6th Cir. 2006); *Martin*, 381 F.3d at 578 n.1. The phrase appears to have its genesis in the Tenth Circuit, though even there it went unexplained save a general citation to *Walling v. General Industries Co.*, 330 U.S. 545, 547-48 (1947). *See, e.g.*, *Donovan v. United Video, Inc.*, 725 F.2d 577, 580-81 (10th Cir. 1984) (citing *Walling*). *Walling*, however, does not raise the evidentiary burden; it merely clarifies that the applicability of an FLSA exemption is an *affirmative* defense. 330 U.S. at 547-48; *see also Clark v. J. M. Benson, Co.*, 789 F.2d 282, 286 (4th Cir. 1986). The *Walling* Court also noted that the district court was not "*clearly* wrong," citing Fed. R. Civ. P. 52(a)'s requirement that a district court's finding of fact after a bench trial be upheld unless clearly erroneous. *Walling*, 330 U.S. at 550 & n.8 (emphasis added).

We clarify here that the phrase "clear and affirmative evidence" does *not* heighten AEP's evidentiary burden when moving for summary judgment. The word "clear," as used in this phrase, traces to the "clearly erroneous" Rule 52(a) standard, but that standard is inapposite to our current review of a motion for summary judgment. And because establishing the applicability of an FLSA exemption is an affirmative defense, AEP has the burden to establish the following elements by a preponderance of the evidence: "(1) that it pays the [technical writers] at least $250 per week on a salary or fee basis; (2) that the [technical writers'] primary duty consists of office or nonmanual work directly related to AEP's management policies or general business operations; and (3) that the [technical writers'] primary duty requires them to exercise discretion and independent judgment." *Renfro I*, 370 F.3d at 516.[2]

The district court held that AEP had satisfied the first two elements of the test but not the third. Neither party disputes that the first element is met. The employees perfunctorily claim that the district court also erred in finding for AEP on the second element, but make no attempt to develop this argument. We will not consider this argument. *See Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 868 (6th Cir. 2006) ("Issues adverted to in a perfunctory manner,

---

[1] Administrative employees are exempt from the FLSA's overtime requirements. *See* 29 U.S.C. § 213(a)(1). An administrative employee must (1) be salaried "at a rate of not less than $455 per week," (2) primarily perform "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) "exercise . . . discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

[2] The current regulations, which went into effect on August 23, 2004, require employers to pay exempt employees at least $455 per week. 29 C.F.R. § 541.200. The parties do not dispute that the writers' salaries, generally between $1200 and $1700 per week, exceed the regulatory minimum. Furthermore, we need not decide whether to apply the current set of regulations or the pre-2004 regulations. Our decision would be the same under either set.

unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997))). All that remains for us to decide then is whether the technical writers' primary duty—writing procedures[3]—requires that they exercise sufficient discretion and independent judgment to exempt them from the FLSA's overtime requirements.

B

Essentially, the technical writers contend that because AEP has rigid procedures for how to craft maintenance procedures, the writers are simply applying skills rather than exercising discretion and independent judgment. In *Renfro I*, however, we rejected the planners' similar argument "that the heavily-regulated nature of their primary job duty prohibits their exercise of discretion and independent judgment." 370 F.3d at 519. Despite the procedure-driven nature of the planners' work, "[t]he process of generating repair work packages is neither wholly mechanical nor restricted to 'merely applying knowledge in following prescribed procedures.'" *Id.* (quoting 29 C.F.R. § 541.207(c)(1)).

We apply the same reasoning to the technical writers. They do not work under constant supervision and, when preparing a procedure, select the best method to maintain the plant's equipment. Their job requires them to create a clear and understandable set of highly technical instructions for maintaining the electrical and mechanical systems of a particular piece of equipment. Looking to various source materials for some of the technical information and using a computer to aid research and recommendations does not detract from the import of the discretion and independent judgment exercised. Channeling discretion through a manual on procedure writing does not eliminate the existence of that discretion.

To determine whether an employee, constrained by guidelines and procedures, actually exercises any discretion or independent judgment, *see id.*; *see also Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 14 (1st Cir. 1997); *Haywood v. N. Am. Van Lines*, 121 F.3d 1066, 1073 (7th Cir. 1997), we consider whether those guidelines and procedures contemplate independent judgment calls or allow for deviations, *Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 404 (6th Cir. 2004). Neither the technical writers' manual nor the daily realities of their work environment eliminates their use of considerable discretion or independent judgment.

The manual provides a guideline on how to develop a procedure, not an encyclopedia of strict requirements. It does not answer substantive questions that might arise during the research, analysis, and development of a procedure; nor does it restrict the technical content of the instructions that are formatted by the general template. Rather, it outlines various items for the writer to consider when researching and drafting a procedure and recommends certain checks to ensure the feasibility of a procedure once written. The writer is free to judge whether, based on her experience, she needs to perform these checks. The manual ensures uniformity of the style and format of the technical writers' procedures, but not their content.

The approach taken by one technical writer to create a complex procedure often differs from that of another technical writer creating a similar procedure. As Plaintiffs' own witness testified in his deposition, two different writers may solve the same problem two different ways, even though both solutions are equally effective. AEP could assign two different writers to create the same procedure and receive differing documents—both in level of detail and in approach—that sufficiently instruct the users of the procedure on how to properly complete the task. It is apparent

---

[3]We agree with the technical writers' contention that this is their primary duty.

to us that any reasonable juror would conclude that the technical writers "actually exercise discretion and independent judgment." *Renfro I*, 370 F.3d at 519.

### III

Because we hold that AEP was entitled to summary judgment on its claim that the writers were properly classified as exempt from the FLSA overtime regulations, we do not reach the issue of whether AEP is entitled to a good-faith defense.

### IV

We reverse the district court's grant of summary judgment in favor of the writers and its denial of summary judgment in favor of AEP, vacate the judgment awarding the plaintiffs liquidated damages, and remand the case to the district court with instructions to enter summary judgment in favor of AEP.

─────────────────

**DISSENT**

─────────────────

KATHLEEN M. O'MALLEY, District Judge, dissenting.  I respectfully dissent.  The underlying litigation actually involves three classes of plaintiffs employed by AEP at the Cook power plant: technical writers, planners, and nuclear specialists.  Guided by this Court's prior decisions on this precise issue, the district court did a very careful job of analyzing and differentiating between the three job classifications - each of which AEP considered to be exempt from the FLSA's overtime provisions.  In determining that, for purposes of the cross-motions involved in this appeal, the technical writers were non-exempt employees, Senior Judge Wendell A. Miles had a thorough and well-developed record before him detailing the day-to-day job duties involved in all three positions.  He also had a specialized familiarity with the parties, their counsel, and the issues involved in this case, having been assigned to similar FLSA litigation involving AEP and other employees at its nuclear power plants.  While Judge Miles ultimately concluded the technical writers were entitled to overtime wages, he carefully drew distinctions between the writers and the two classifications of employees he concluded were *not* entitled to overtime wages - i.e., the planners and nuclear specialists.  Given the district court judge's detailed familiarity with the respective job duties, the full record that was developed, and the careful procedure the court employed, I would defer to the district court's determination.