RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0369p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RYAN C. HENRY, et al.,

                _Plaintiffs-Appellants_,

      _v._

QUICKEN LOANS, INC.,

                _Defendant-Appellee_.

No. 11-2125

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:04-cv-40346—Stephen J. Murphy III, District Judge.

Argued: October 11, 2012

Decided and Filed: October 25, 2012

Before: SUTTON and GRIFFIN, Circuit Judges; WELLS, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Adam W. Hansen, NICHOLS KASTER, PLLP, Minneapolis, Minnesota, for Appellants. Jeffrey B. Morganroth, MORGANROTH & MORGANROTH, PLLC, Birmingham, Michigan, for Appellee. **ON BRIEF:** Adam W. Hansen, Donald H. Nichols, Paul J. Lukas, Rachhana T. Srey, Robert L. Schug, NICHOLS KASTER, PLLP, Minneapolis, Minnesota, for Appellants. Jeffrey B. Morganroth, Mayer Morganroth, MORGANROTH & MORGANROTH, PLLC, Birmingham, Michigan, Robert P. Davis, MAYER BROWN LLP, Washington, D.C., William D. Sargent, Robert J. Muchnick, Matthew S. Disbrow, HONIGMAN MILLER SCHWARTZ AND COHN LLP, Detroit, Michigan, for Appellee.

_____

[*]The Honorable Lesley Wells, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

———————————

**OPINION**

———————————

SUTTON, Circuit Judge.    Mortgage banker Ryan Henry and 445 of his colleagues sued Quicken Loans, claiming the company failed to pay them overtime wages from 2003 to 2007, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.  Quicken responded that the mortgage bankers fell within an exemption to the FLSA.  After a five-week trial, a jury ruled for Quicken.  The mortgage bankers appeal. We affirm.

I.

Quicken Loans offers mortgages to customers in all fifty States.  Mortgage bankers like Henry play a prominent role in the lending process, but the parties disagree over how best to describe that role.

According to Quicken, mortgage bankers are the "quarterback[s]" of the lending process. R.722 at 157, 162.  In that capacity, they perform a variety of roles: "collecting and analyzing the relevant information from our Clients concerning their financial status"; "understanding our Clients' objectives, goals and needs"; "educating and advising our Clients on the entire financing process"; and closing loans.  Ex. D-4, App. at 1469–70. Quicken also distinguishes mortgage bankers from "front line" employees, who assess whether customers have any "interest in pursuing a mortgage loan with Quicken."  R.716 at 148–49.

The mortgage bankers by contrast insist they are glorified salesmen.  They point to letters and internal memos that identify the mortgage bankers as a "sales force" and encourage them to "SELL SELL SELL."  Ex. P-17, App. at 244; Ex. P-3, App. at 157. According to the mortgage bankers, their daily routines are largely prescribed by a two-page document that outlines a ten-step process for developing business.

(The record does not disclose whether the parties reversed their positions during the next negotiation over salaries.)

After a lengthy trial, a jury found that Quicken's characterization was the more accurate of the two and ruled for the company. The plaintiffs filed a renewed motion for judgment as a matter of law or for a new trial, but the district court denied it. The mortgage bankers appeal the district court's rejection of their post-trial motion and its earlier partial summary-judgment ruling in favor of Quicken.

## II.

The FLSA lays out a general rule that employees must be compensated one and one-half times their regular hourly pay for each hour worked in excess of forty hours per week. 29 U.S.C. § 207(a)(2). It then includes several exemptions, one of which covers employees:

> (1) Compensated . . . at a rate of not less than $455 per week . . . ;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a); *see also* 29 U.S.C. § 213(a).

The parties agree that the mortgage bankers' salaries satisfy the compensation prong of the administrative exemption. They disagree over application of the management-related prong and the discretion-and-independent-judgment prong. The jury sided with Quicken on the last two questions.

We must respect the jury's verdict unless "no reasonable juror could have found" for Quicken. *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009). "A court may grant judgment as a matter of law only when there is a complete absence of fact to support the verdict" and "may grant a new trial only when a jury has reached

a seriously erroneous result." *Id.* (internal quotation marks omitted).  Ample evidence supports the jury's verdict.

*The management-related prong*.  To satisfy this requirement, the employee's "primary duty" must involve "work directly related to the management or general business operations" of the company or its customers. 29 C.F.R. § 541.200(a)(2).  In this setting, "'[p]rimary duty' does not mean the most time-consuming duty; it instead connotes the 'principal' or 'chief'—meaning the most important—duty performed by the employee." *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 504 (6th Cir. 2007).  Nor do labels or titles by themselves answer the question.  Moving from the general to the specific, the U.S. Department of Labor offers the following guidance for determining whether a financial-services employee fits within the exemption:

> Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing, or promoting the employer's financial products.  However, an employee whose primary duty is selling financial products does not qualify for the administrative exemption.

29 C.F.R. § 541.203(b).

The question is whether the evidence supported the jury's finding that the first sentence of this statement more aptly described the mortgage bankers' "primary duty" than the second.  It did.  None of the forty witnesses who testified at trial seemed to contest the fact that mortgage bankers perform every one of the tasks listed in the first sentence of § 541.203(b).  The parties' witnesses diverged, however, as to the issue presented by the last sentence of § 541.203(b):  whether the mortgage bankers' *primary* duty is selling financial products.  The jury acted well within its bounds in deciding that it is not given the competing evidence on this point.

Quicken put on nine witnesses who testified about their job responsibilities. Of these nine witnesses, at least four adamantly opposed the notion that their primary duty was "selling financial products." *See, e.g.*, R.733 at 196; R.734 at 33–34, 141, 152; R.735 at 34, 190, 198–99. The others were not asked similar point-blank questions about their primary duties, but they all resisted the notion that their job could be boiled down to that of a salesperson. Counsel for Quicken also questioned several of the plaintiffs about their resumes, pointing out that the documents described responsibilities ranging far beyond sales. Plaintiff Krista Quinn explained that she "[p]repare[d] and implement[ed] strategies for clients to ach[ie]ve their financial goals and manage their mortgage more effectively," App. at 2006, and acknowledged she would have listed sales on her resume had it been her primary duty. The jury observed each of these witnesses and, after assessing each witness's credibility, sided with Quicken. The evidence permits that choice.

*The discretion-and-independent-judgment prong.* To satisfy the third requirement, Quicken had to show that the mortgage bankers' "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). Numerous witnesses professed that they exercised discretion and independent judgment on the job, including some of the plaintiffs' own witnesses. Ryan Henry, the lead plaintiff, acknowledged that there were "plenty of things" that required him to exercise discretion and judgment, including "assist[ing] clients in selecting the proper mortgage loan." R.721 at 155–56. Victor You, a mortgage banker who has worked at Quicken since 2001, explained that he relied on his own judgment in making recommendations to clients about the products that would fit their needs and that "pick[ing] the actual loan for [a] client" was "all up to [him]." R.734 at 143–44.

The mortgage bankers point to Quicken's ten-step guidelines for mortgage lending and the supervisory checks Quicken had in place as evidence that their discretion was circumscribed. But, as we have held before, such factors are not dispositive. *See, e.g.*, *Thomas*, 506 F.3d at 504 (concluding that "active supervision . . . do[es] not

eliminate . . . day-to-day discretion"); *Renfro v. Ind. Mich. Power Co. (Renfro II)*, 497 F.3d 573, 577 (6th Cir. 2007) (concluding that "[l]ooking to various source materials for . . . technical information . . . does not detract from the import of the discretion and independent judgment exercised"); *Renfro v. Ind. Mich. Power Co. (Renfro I)*, 370 F.3d 512, 519 (6th Cir. 2004) (concluding that "the heavily-regulated nature" of an employee's primary job duty did not "prohibit[] the[] exercise of discretion and independent judgment"). That Quicken used various methods to channel the mortgage bankers' discretion "does not eliminate the existence of that discretion." *Renfro II*, 497 F.3d at 577.

According to the regulations, "discretion and independent judgment" mean the "comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). The jury concluded—after listening to forty witnesses and five weeks of testimony—that the mortgage bankers' interactions with customers fit this description. That is a reasonable finding of fact, leaving us no basis for disturbing it.

It is true, as plaintiffs argue, that this circuit and other circuits have resolved many administrative-exemption cases as a matter of law. But one premise of those decisions was the absence of a material fact dispute. *See, e.g.*, *Thomas*, 506 F.3d at 509; *Renfro II*, 497 F.3d at 577–78. The same is not true here. The mortgage bankers and Quicken presented conflicting evidence in the form of documents and testimony about the bankers' primary job responsibilities. On this record, "it must be left to a trier of fact to weigh the credibility" of the parties' contradictory "characterization[s] of [the mortgage bankers'] day-to-day duties." *Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 407 (6th Cir. 2004) (holding, in a case similar to this one, that the management and discretion-and-independent-judgment prongs should be weighed by a reasonable trier of fact); *see also Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 829 (10th Cir. 2012) (concluding that "the primary duty determination is a factual one," suitable for a factfinder); *Chao v. Double JJ Resort Ranch*, 375 F.3d 393, 395–96 (6th Cir. 2004) ("Whether employees are within an exemption from the provisions of the [FLSA] is

primarily a question of fact."). It may be true that courts can resolve many of these cases as a matter of law. This simply is not one of them.

The mortgage bankers separately argue that the jury's application of the administrative exemption involved a question of law, one to which we must give fresh, not clear-error, review. Quicken responds that the mortgage bankers forfeited this argument by failing to raise it below. That may be true. Either way, it makes no difference: This case implicated several relevant fact disputes—namely, what the Quicken mortgage bankers did from day to day and whether those activities involved management-like responsibilities, discretion and independent judgment. All of these fact disputes fall within the jury's domain. No doubt the jury instructions required the proper legal framing of these factfindings. But the mortgage brokers do not challenge those instructions.

The mortgage bankers also invoke several opinion letters from the Department of Labor and *Casas v. Conseco Finance Corp.*, No. Civ. 00-1512, 2002 WL 507059 (D. Minn. Mar. 31, 2002). But the letters and *Casas* do not preclude juries from determining whether certain types of employees, including employees at *other* companies working under different conditions, are exempt from the FLSA. They simply apply the same inquiry to distinct scenarios, in some instances through non-binding opinion letters, *see Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554 (6th Cir. 1999), and in one instance through a non-binding, un-appealed district court summary-judgment decision. None of these sources speaks to the parties' dispute in this instance over whether Quicken's mortgage bankers were eligible for the exemption. The same three-pronged test outlined in § 541.200(a) applies to all of these settings, which in some instances will allow a jury trial and in other instances will not and which in some instances will lead to advice from the Department of Labor that the employees are exempt and in other instances will not. These letters and *Casas* no more prove that *this* jury verdict was flawed as a matter of law than this jury verdict proves that the letters and *Casas* were wrong as a matter of law.

Because we hold that the jury verdict in favor of Quicken must stand, we need not consider whether the district court properly granted Quicken's partial summary-judgment motion on its good-faith and lack-of-willfulness defenses. *See Renfro II*, 497 F.3d at 578.

III.

For these reasons, we affirm.