RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0374P (6th Cir.)
File Name: 01a0374p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

STEPHEN A. ALE, et al.,
　　　　*Plaintiffs-Appellees,*

　　　*v.*

No. 99-6642

TENNESSEE VALLEY
AUTHORITY,
　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 96-00935—Robert P. Murrian, Magistrate Judge.

Argued: January 25, 2001

Decided and Filed: October 17, 2001

Before: JONES, BATCHELDER, and CLAY, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:** John E. Slater, TENNESSEE VALLEY
AUTHORITY, Knoxville, Tennessee, for Appellant. Cecilia
S. Petersen, Knoxville, Tennessee, for Appellees.
**ON BRIEF:** John E. Slater, A. Jackson Woodall, Thomas F.
Fine, Jane Park Farris, TENNESSEE VALLEY

1

AUTHORITY, Knoxville, Tennessee, for Appellant. Cecilia S. Petersen, Knoxville, Tennessee, for Appellees.

––––––––––––––––

**OPINION**

––––––––––––––––

NATHANIEL R. JONES, Circuit Judge. Plaintiffs, 20 former employees of the Tennessee Valley Authority ("TVA"), worked in the TVA's Site Security Organization at its Watts Bar ("WBN") and Sequoyah Nuclear ("SNP") Plants. In November of 1996, plaintiffs brought a claim against the TVA charging that in June 1996, it willfully eliminated their overtime pay in violation of Section 7 of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 207. Pursuant to 28 U.S.C. § 636(c), both parties agreed to have their case tried by a United States Magistrate Judge.

Prior to the damages phase of the trial, plaintiffs moved to amend their complaint to include all unpaid overtime compensation, including compensation owed prior to June 1996. The motion was granted. After conducting a non-jury trial on liability and damages, the magistrate judge found that TVA willfully violated the FLSA and issued an order granting damages on November 24, 1999. The TVA now appeals this order. For the reasons stated below, we **AFFIRM.**

## I. Facts

As noted above, plaintiffs sued TVA for willfully failing to pay them time-and-a-half overtime wages in violation of section 7(a) of the FLSA. In response, TVA alleges that plaintiffs are not entitled to such compensation because they are *bona fide* executive and administrative employees and are exempt from the mandates of section 7(a).

## A. Background

### 1. The Fair Labor Standards Act

Section 7(a) of the FLSA directs employers who regularly require their workers to work more than 40 hours a week to compensate those workers by paying them overtime wages at a rate of one and half times their regular rate of pay. 29 U.S.C. § 207. This law was evidently enacted to induce employers to employ more workers and/or compensate their workers for the burden of a long workweek. *See Walling v. Youngerman-Reynolds Harwood Co.*, 325 U.S. 419, 423-24 (1945).

However, not all workers are covered by this scheme. Under Section 13(a) of the FLSA, Congress exempted employees employed in a *bona fide* executive, administrative, or professional capacity from the requirements of section 7(a). 29 U.S.C. § 213. Although Congress did not define these terms, it designated the Department of Labor ("DOL") to take responsibility for implementing and clarifying the act. *See* 29 U.S.C. § 213(a)(1); *Auer v. Robbins*, 519 U.S. 452, 456 (1997). The DOL regulations provide guidance regarding the scope of the executive and administrative exemptions at issue in this case.

### 2. Department of Labor Regulations

The DOL regulations contain different definitions of *bona fide* executive and administrator depending on the salary of the employee. If an employee earns more than $250 per week, the employer must show that the employee meets the "short test" definition of *bona fide* administrator or executive in order to prove that he is exempt from section 7(a). *See* 29 C.F.R. §§ 541.2(e)(2), 541.1(f). If the employee earns less than $250 per week, then the employer must meet a more rigorous "long test" in order to prove that the employee is exempt from section 7(a). *See* 29 C.F.R. §§ 541.1 (a)-(e), 541.2(a)-(e). Since it is not disputed that all of the plaintiffs earned more than $250 per week, the short test definitions of executive and administrator apply in this case.

#### a.    **Executive**

The DOL "short test," defines the term employee employed in a *bona fide* executive capacity as any employee "whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein . . . ."    *See* 29 C.F.R. § 541.1(f).

The regulations provide guidance as to which duties are managerial in nature.  According to 29 C.F.R. § 541.102(b),

[I]t is generally clear that work such as the following is exempt work when it is performed by an employee in the management of his department or the supervision of the employees under him: Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and  disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.

In addition, the regulations also indicate how to determine whether the performance of managerial duties constitutes the employee's primary duty.  29 C.F.R. § 541.103 states,

The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of the employee.  In the ordinary case it may be taken as a good

find that the magistrate judge did not abuse his discretion by allowing the plaintiffs to amend their complaint.

### III.  Conclusion

For the reasons stated above, we **AFFIRM** the magistrate judge's decision.

permitting amendments in order to ensure determination of claims on their merits." *See Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir. 1988) (citing *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).

In *Yellow Freight System, Inc. v. Martin*, complainant filed a complaint with the Secretary of Labor alleging that Yellow Freight had violated § 405 of the Surface Transportation Assistance Act ("STAA") by discharging him in retaliation for his refusal to drive a truck while he was ill. 954 F.2d 353, 358 (6th Cir. 1992). At an administrative hearing, the complainant introduced evidence which focused on showing that his former employer violated STAA § 405(b). After reviewing the record, the Secretary agreed with the administrative law judge's recommendation that Yellow Freight did not violate § 405(b); however, it found that Yellow Freight had violated § 405(a). On appeal, the Sixth Circuit found that the complainant did not expressly inform Yellow Freight that § 405(a) was at issue, and Yellow Freight did not impliedly consent to the introduction of this new charge by litigating it at the administrative hearing. The Court held that the Secretary's failure to give Yellow Freight "an opportunity to respond" before finding a violation of § 405(a) violated due process.

Citing *Yellow Freight*, TVA argues that the magistrate judge's decision to allow plaintiffs' to expand their claims was an abuse of discretion because it prejudiced the defendant by introducing new issues where not raised by express or implied consent during the course of the liability phase of the trial. We disagree. Although it is true that TVA may not have impliedly consented to litigate the issue of their pre-1996 overtime liability during the liability phase of the trial, the magistrate judge made it clear that TVA would have ample opportunity to respond to this issue during the damages phase of the trial. J.A. at 142. Given that TVA has not introduced any evidence that it was prevented from litigating this issue during the damages phase of the trial, it has not demonstrated that it suffered any prejudice. Accordingly, we

rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. . . . Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.

### b.    Administrative

Pursuant to the DOL "short test," the term employee employed in a *bona fide* administrative capacity is defined as any employee "whose primary duty consists of the performance of [office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers . . .,] which includes work requiring the exercise of discretion and independent judgement." 29 C.F.R. § 541.2(e)(2).

Section 541.205(c) explains the contours of the phrase "directly related to management policies or general business operations." It states,

(1) It is not possible to lay down specific rules that will indicate the precise point at which work becomes of substantial importance to the management or operation of a business. It should be clear that the cashier of a bank performs work at a responsible level and may therefore be said to be performing work directly related to management policies or general business operations. On the other hand, the bank teller does not.

(2) An employee performing routine clerical duties obviously is not performing work of substantial

importance to the management or operation of the business even though he may exercise some measure of discretion and judgment as to the manner in which he performs his clerical tasks. . . . . An employee operating very expensive equipment may cause serious loss to his employer by the improper performance of his duties. An inspector, such as, for example, an inspector for an insurance company, may cause loss to his employer by the failure to perform his job properly. But such employees, obviously, are not performing work of such substantial importance to the management or operation of the business that it can be said to be "directly related to management policies or general business operations" as that phrase is used in § 541.2.

29 C.F.R. § 541.205(c)(1)-(2).[1]

The regulations also provide guidance regarding what constitutes the exercise of discretion and independent judgement. Section 541.207(a) explains that,

In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term used in the regulations in subpart A of this part, more over, implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance.

29 C.F.R. § 541.207(a).

---

[1]The regulations indicate that the determination of whether the employees' primary duty is "directly related to management policies or general business operations" should be guided by the discussion of primary duty in the context of the executive exemption noted above. *See* 29 C.F.R. § 541.206.

responsibility was performing clerical duties such as calling people to come to work and doing the payroll.

## C.   Motion to Amend

As noted above, the plaintiffs' initial complaint alleged that they performed work for which they were not compensated during the period from "June 1996 [when the TVA implemented its new overtime policy] to date." J.A. at 21. After the liability phase of the trial, the plaintiffs filed a motion to expand their claim to include the uncompensated briefing periods that some of the plaintiffs were required to attend before starting each shift. These claims extended back to three years before the implementation of the new overtime policy in 1996. The magistrate judge granted this motion under Rule 15(b) of the Federal Rules of Civil Procedure.[5]

We review the magistrate judge's decision to grant plaintiffs' Rule 15(b) motion for abuse of discretion. *Lones v. Detroit, Toledo, and Ironton R.R. Co.*, 398 F.2d 914, 922 (6th Cir. 1968); *Grand Light & Supply Co., Inc. v. Honeywell, Inc.*, 771 F.2d 672, 680 (2d Cir. 1985). In doing so, we recognize that "[t]he Rules put forth a liberal policy of

---

[5]Fed.R.Civ.P. 15(b) states:
(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

whether an employee is exempt from the FLSA overtime provisions. *See* 29 C.F.R. § 541.103, 207(b). The words "in charge" are not a magical incantation that render an employee a *bona fide* executive regardless of his actual duties.

In *Jones v. ENSR Corp.*, the Sixth Circuit considered whether a plaintiff employed as a field supervisor for a company engaged in the environmental reclamation of PCB-contaminated transformers was a *bona fide* executive exempt from FLSA overtime pay regulations. No. 96-3836, 1997 WL 369440, **1 (6th Cir. July 1, 1997) (unpublished). Although we noted that the plaintiff had described himself as the "guy in charge," this court did not hold that this fact alone dictated that his primary duty was management. *Id*. at **3. Rather, we looked at the plaintiff's actual duties. In doing so, we found that he performed several managerial duties including interviewing, training, handling client relations, setting workers hours, delegating their tasks, and making sure that the job was done within budget and on time. *Id*. Based on these findings we concluded that plaintiff was a *bona fide* executive. *Id*. at **4.

In the instant case, however, the facts indicate that shift supervisors did not have management as their primary duty. Unlike the assistant managers in *Burger King* and the field supervisor in *Jones*, the shift supervisors did not set or adjust the hours of work, determine which employees manned which posts, or train employees. Although shift supervisors did spend some of their time supervising employees, this supervision was not managerial in nature because they had no control over the people they supervised. *See* 29 C.F.R. § 541.102(b) (listing selecting employees, apportioning work, recommending promotions, disciplining employees, and determining techniques or materials to be used as examples of managerial duties); *Walling v. General Indus. Co.*, 155 F.2d 711, 714 (6th Cir. 1946) ("[I]t is an essential of executive duties . . . that there be active participation in controlled supervision and management of the business.") Furthermore, supervision was not these employees' primary duty. As the magistrate judge pointed out, the shift supervisors' primary

In addition, section 541.207(c) distinguishes the exercise of discretion and independent judgement from the use of skill in applying techniques, procedures, or specific standards. It states,

(1) Perhaps the most frequent cause of misapplication of the term "discretion and independent judgement" is the failure to distinguish it from the use of skill in various respects. An employee who merely applies his knowledge in following prescribed procedures or determining which procedures follow, or who determines whether specified standards are met . . . is not exercising discretion and independent judgment within the meaning of § 541.2. This is true even if there is some leeway in reaching a conclusion, as when an acceptable standard includes a range or a tolerance above or below a specific standard.

(2) A typical example of the application of skills and procedures is ordinary inspection work of various kinds. Inspectors normally perform specialized work along standardized lines involving well-established techniques and procedures which have been catalogued and described in manuals or other sources. Such inspectors rely on techniques and skills acquired by special training or experience. They may have some leeway in the performance of their work but only within closely prescribed limits.

29 C.F.R. § 541.20(c)(1)-(2).

## B.   The Magistrate Judge's Decision

At trial, the parties presented conflicting evidence regarding the employees duties. After weighing the evidence, the magistrate judge issued a lengthy memorandum opinion, applying the DOL regulations and analyzing whether the plaintiffs are *bona fide* executives or administrators exempt from section 7(a). Since the 20 plaintiffs held several different job positions including security shift lieutenants, shift supervisors, a training officer, and a programs and

procedures specialist, the magistrate judge addressed each position separately.

### 1.    Training Officer (Brad Hamblin)

Brad Hamblin worked as a training officer at WBN. Based on the testimony of Hamblin and DOL expert Kenneth Fitcham, the magistrate judge found that Mr. Hamblin was responsible for training  and retraining WBN employees. Hamblin taught very specific lesson plans that he was given when he became the training officer at WBN. He did not write any lesson plans, he only adjusted the inherited lesson plans to incorporate new Administrative Orders ("AO") issued by the Nuclear Regulatory Commission. These orders prescribed strict procedures and protocols to be followed in the operation of nuclear power plants. Mr. Hamblin was also responsible for testing the officers after their training was complete. As was the case with the lesson plans, Mr. Hamblin inherited the tests that he used and did not write any new ones. Grading was pass fail and consisted of determining whether the officers had performed a task correctly based on specific AOs and guidelines.

On the basis of this evidence, the magistrate judge concluded that Mr. Hamblin did not qualify as a *bona fide* administrative employee because his "primary duty" did not include the exercise of "discretion or independent judgement." More specifically, he found that any changes that Hamblin made to his lesson plans were dictated by the AOs and that his job did not involve the "comparison and evaluation of possible courses of conduct and the making of any decision after consideration of the various possibilities." J.A. at 59 (citing 29 C.F.R. § 541.207(a)). Similarly, the magistrate judge held that the testing of officers did not require discretion or independent judgement because it consisted of the "application of Hamblin's knowledge in following proscribed procedures" and "determin[ing] whether specified standards were met." *Id*. (citing C.F.R. § 541.207(c)(1)).

considered exempt executives under the FLSA. The ultimate question of whether the magistrate judge correctly determined that an employee is exempt is a question of law that we review *de novo*. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)("The question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law . . .").[4]

On appeal, TVA argues that the magistrate judge applied the wrong legal standard when analyzing whether shift supervisor employees are exempt under the FLSA. TVA cites *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir. 1982). In *Burger King,* the First Circuit considered whether Burger King assistant managers qualified for the executive exemption. *Id*. at 223. The court found that assistant managers train employees, schedule employees, assign work, oversee product quality, determine the quantity of food to be produced at any given time, and perform various record-keeping, inventory, and cash reconciliation duties. *Id*. Assistant managers were often the highest ranking employee in a store. *Id*. Based on these facts, the First Circuit held that the assistant managers were "in charge" of the restaurant during their shifts and that they had management as their primary duty. *Id*. at 226-227. TVA contends that since the magistrate judge found that the shift supervisors were in "charge of their shifts," they must have management as a primary duty. J.A. at 96. We disagree.

The fact that the magistrate judge used the words "in charge of their shifts" to describe the shift supervisor's duties does not prove that these employees had management as their primary duty. As noted above, the DOL regulations indicate that courts must look to the specific facts when determining

---

[4]The defendant must establish through "clear and affirmative evidence" that the employee meets every requirement of an exemption. *Roney v. United States of America*, 790 F. Supp. 23, 26 (D.D.C. 1992). The exemptions are to be narrowly construed. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997).

defendant argues that this description proves that the lieutenants were *bona fide* administrators. However, as above, this description does not prove that these employees were exempt from the FLSA because the term "direct" does not specifically describe the actual nature of the lieutenants relationship to the security personnel.

As the magistrate judge pointed out, the lieutenants' decisions were so closely prescribed by AOs and other guidelines that they did not exercise independent judgement. Although they may have had the authority to allow a sick officer to man a post near the bathroom, decisions such as these do not qualify the lieutenants as administrators because they do not involve "matters of significance." *See* 29 C.F.R. § 541.207(a) (the term "discretion and independent judgement" "implies that the person has the authority or power to make an independent choice . . . with respect to matters of significance."). **3**

Accordingly, we find that the magistrate judge's holding that the employees' resumes and position descriptions were vague and do not support a finding of exemption is not clearly erroneous.

## B.   Findings of Law

As noted above, the magistrate judge considered whether the shift supervisors were *bona fide* executives and were exempt from section 7(a) of the FLSA. The magistrate judge held that the shift supervisors did not meet the first prong of the executive "short test" because they did not have management as their primary duty and could not be

---

**3**TVA also argues that Ron Garrison's position description proves that he "directed and managed the administration, preparation, implementation, and compliance of security programs and procedures." However, in reality this function only consisted of editing existing administrative orders. While it is true that his resume indicates that he developed procedures, this was done prior to 1996 when Garrison held a different position which is not relevant to this case.

### 2.   Lieutenants

The plaintiffs include nine former security shift lieutenants: Stephen A. Ale, Ernest C. Bunch, Frank A. Little, Willard McCullough, Stephen Norwood, Jeff Smith, Wayne C. Smith, Michael Tipton, and Steven J. Warren (hereafter collectively referred to as "the lieutenants"). At trial, several of the lieutenants testified that they furnished security and "supervised" 15 to 30 officers. Each day they received a briefing from the lieutenant who they were replacing, and made three patrols to observe security measures and make sure that officers were complying with required procedures. The lieutenants had specific guidelines for evaluating the officers' conduct. If an officer was not in compliance, the lieutenant could correct the officer or assume the post himself until another officer could be provided. According to the officers and the DOL expert, Mr. Fitcham, there were guidelines and instructions for almost every possible occasion. The lieutenants also conducted pre-packaged drills. These drills were slightly modified from time to time so that they would not be too predictable. Occasionally, the lieutenants helped shift supervisors in evaluating officer performance.

Based on this evidence, the magistrate judge found that the administrative exemption was not applicable because the lieutenants did not exercise "discretion or independent judgement" within the meaning of the DOL regulations. Specifically, he observed that "nearly everything that the lieutenants did and nearly every decision the lieutenants made was prescribed, controlled, or governed by an AO, a Nuclear Regulatory Commission ("NRC") regulation, or a Nuclear Regulatory Instruction ("NRI")." Accordingly, he found that lieutenants did not have the "authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." J.A. at 74 (citing 29 C.F.R. § 541.207(a)). Rather, they were more like inspectors who used their skill or knowledge "in following proscribed procedures or determining which procedure to follow, . . . or in determining whether specific

standards were met."    J.A. at 75-76 (citing 29 C.F.R. § 541.207(c)(1)).

The magistrate judge also found that the lieutenants did not meet the criteria for an executive exemption. He noted that there was no credible evidence that the "primary duty" of the lieutenants was "management" as defined in the regulations.

### 3.    Shift Supervisors

The plaintiffs also include nine former shift supervisors: Diane Doumbouya, Joseph Down, Jr., Carlos E. Gregory, Slaughter L. Henderson, Joseph E. Kelley, John M. Ogle, Roger E. Reynolds, Charles N. Rogers, and Wayne D. Tilson (hereafter collectively referred to as "the shift supervisors"). Based on the testimony of several shift supervisors and the expert witness, the magistrate judge found that the shift supervisors spent much of their time doing clerical work because the clerical support position had been eliminated and there was no one else to do the work. A good portion of their time was spent calling employees to convince them to fill empty shifts and completing payroll forms.

The judge also found that the shift supervisors completed evaluations of the lieutenants. However, these evaluations were not instrumental in recommendations or promotions and were frequently changed by the security operations supervisor. Furthermore, while the shift supervisors did conduct some supervision, they did not did not direct other employees work, decide which posts they would hold, or have any authority to discipline other employees.

Based on these findings, the magistrate judge held that the shift supervisors were not exempt under the executive or administrative exemptions. They did not qualify for the administrative exemption because they did not use "discretion or make independent judgements with regard to a matters of significance." They did not qualify for the executive exemption because their "primary duty" was not the "management" of the plant.

### 3.    Vagueness

Alternatively, TVA argues that the magistrate judge's factual findings are clearly erroneous because he was simply mistaken that the resumes and other documents are too vague to support a finding that the employees are exempt from the FLSA. On appeal, the defendant cites Brad Hamblin's resume in which he stated that he was "solely responsible for all of the training of current officers, new officers, and members of the security staff" and that he was "solely responsible for all writing . . . , rewriting, and updating of lesson plans . . ." TVA argues that these statements are not vague and that they prove that Hamblin was a *bona fide* administrator who exercised "discretion and independent judgement." We disagree.

Although these statements facially suggest that Hamblin exercised independent judgement, a closer inspection reveals that these statements do not contradict the magistrate judge's factual findings. For example, Hamblin's claim that he was the person "solely responsible" for writing lesson plans does not indicate that he actually did so. Although he may have been theoretically responsible for writing lesson plans, the record indicates that he was never required to do so because he inherited all of his lesson plans from previous instructors. Furthermore, while it is true that Hamblin updated existing lesson plans to make them comply with new Administrative Orders, there is no indication that incorporating new AOs into the curriculum required the use of any discretion and independent judgement. Hamblin did not have the option of teaching the new orders, rather it was required. Furthermore, although he was responsible for the training of other employees, the evidence indicates that this training involved teaching very specific procedures and did not involve and discretion or judgement.

TVA also emphasizes that the lieutenants submitted resumes and job applications in which they stated that they "direct[ed] the security activities of assigned uniformed security personnel within the security shift operations." The

... testimony is in conflict with contemporaneous documents, we can give it little weight" and found that district court's factual determination was clearly erroneous. *Id*. at 396. TVA argues that *Gypsum* dictates that the resumes and position descriptions and other contemporaneous documents introduced by the defendant in this case should have been weighed more heavily than the testimony of the plaintiffs. We disagree.

Unlike the documents in *Gypsum,* which unambiguously stated that patent licenses were secured, many of the statements that the employees made in their resumes and position descriptions are vague and do not directly contradict the witnesses' later testimony concerning their day to day job activities. Accordingly, there is no reason why these documents should be given any special weight vis-a-vis the employees' later testimony. *See Riddell v. Guggenheim*, 281 F.2d 836, 840 (9th Cir. 1960) (holding that *Gypsum* does not apply in cases where the documentary evidence is equivocal).[2]

Although it is true that several courts have credited vague descriptions of job positions in resumes, such evidence is usually used to bolster more specific evidence of an employee's duties. *See Piscione v. Ernst & Young*, 171 F.3d 527, 536-37 (7th Cir. 1999). When titles and vague job descriptions are not born out by more specific evidence they are not entitled to any special weight, in fact, this type of evidence has been rejected. *See Adams v. United States*, No. 98-5011, 1998 WL 804552, at **4 (Fed. Cir. Sept. 23, 1998) (unpublished); *see also Brock*, 667 F.Supp at 565-566. Accordingly, the magistrate judge's decision to discount vague resumes and position descriptions was not clearly erroneous.

---

[2]In addition, as the magistrate judge observed, there is reason to believe that these resumes may not provide the most accurate picture of an employee's job because resumes are typically "designed to enhance the employees duties and responsibilities in order to obtain a job."

### 4. Programs and Procedures Manager (Ron Garrison)

Ron Garrison served as the Programs and Procedures Manger at Watts Bar Nuclear Plant. Prior to1996, Garrison was employed at TVA corporate. While there, he wrote security plans and procedures and had used a significant measure of discretion and independent judgement. However, his duties changed dramatically when he went to work at WBN in 1996. At WBN, Garrison made typographical changes to AOs and incorporated these changes into other AOs. The magistrate judge found that Mr. Garrison made "no independent choice free from immediate direction or supervision . . . with respect to matters of significance." J.A. at 103 (citing 29 C.F.R. § 541.207). Accordingly, he concluded that Garrison was not a *bona fide* administrative employee, and not exempt from the overtime pay requirements of section 7(a).

## II. Discussion

### A.  Findings of Fact

At trial, the defendant offered resumes, position descriptions, and performance evaluations in an attempt to prove that the plaintiffs were *bona fide* executive and administrative employees who are not entitled to overtime under the FLSA. After considering this evidence, the magistrate judge discounted it because he found that this evidence contained generalities and was too vague to support a determination that any of the plaintiffs are exempt. The judge pointed out that it is necessary to focus on the employees' day-to-day activities in order to determine whether these employees are subject to administrative or executive exemptions. Upon considering the plaintiffs' actual duties, the magistrate judge held that they were not exempt from the FLSA. We review the magistrate judge's factual findings for clear error. *See Hamblen v. Ware*, 526 F.2d 476, 478 (6th Cir. 1975) ("Findings of fact . . . may not be set aside unless clearly erroneous.") (citing *Walling v. General Indus. Co.*, 330 U.S. 545, 550 (1947)).

### 1.   Incorrect view of the law

On appeal, TVA argues that the magistrate judge's factual findings are clearly erroneous because they are not based on the FLSA regulations which govern this case. Specifically, the defendant argues that  the magistrate judge erroneously applied the Office of Personnel Management ("OPM") exemption standard which requires the employer to demonstrate that an employee "frequently exercises discretion and independent judgment" in his "normal day-to-day work" in order to prove that a given employee is an exempt administrator. *See* 5 C.F.R. § 551.206(c). According to the defendant, this standard is more rigorous than the DOL "short test" for administrators, which requires only that an employee's "primary duty include discretion and independent judgement."

A fact finder's incorrect view of the law may render factual findings clearly erroneous. *See Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir. 1991) (findings of fact may be clearly erroneous when they are "influenced by an incorrect view of the law"). However, we are not convinced that the magistrate judge applied the wrong standard in this case. Although the judge cited *Berg* v. *Newman,* which involved the interpretation of OPM standards, there is no indication that he applied the more rigorous OPM standard in this case. J.A. at 57-59 (citing 982 F.2d 500 (Fed. Cir. 1992)). Rather, the magistrate judge merely referred to *Berg* as illustrative of the requirement that the TVA establish entitlement based on actual "day-to-day" job duties as opposed to vague job descriptions. *Id*. He stated:

> The key to a determination of whether an employee is covered by an exemption to the FLSA overtime requirements does not depend on an employee's general characterization of his or her job in a resume designed to enhance the employee's duties and responsibilities in an effort to obtain a job, or an employer's general characterization of a particular job. What is important is what an employee **actually** does on a day-to-day basis.

J.A. at 58 (emphasis in original).

There is ample statutory and case law authority to support the magistrate judge's position that courts must focus on the actual activities of the employee in order determine whether or not he is exempt from the FLSA's overtime regulations. 29 C.F.R. § 541.103, which describes primary duty, states that "a determination of whether an employee has management as his primary duty must be based on all the facts in a particular case." In addition, section 541.207(b), which describes the exercise of discretion and independent judgement, notes that "the term must be applied in the light of all the facts involved in the particular employment situation in which the question arises." 29 C.F.R. § 541.207(b). Both of these DOL regulations indicate that the determination of whether an employee is exempt is an inquiry that is based on the particular facts of his employment and not general descriptions. *See also Brock v. Nat'l Health Corp*., 667 F.Supp 557, 565-566 (M.D. Tenn. 1987) (to ascertain exemption status it is necessary to examine closely duties and actual work performed).

### 2.   Weight of the Evidence

TVA also argues that the magistrate judge's factual findings are clearly erroneous because he failed to give the plaintiffs' resumes and position descriptions the proper weight. In support of this argument, defendant cites *United States v. Gypsum Co.*, 333 U.S. 364 (1948). In *Gypsum*, the United States brought an action against several defendants for violation of the Sherman Antitrust Act. *Id*. The government introduced contemporaneous business documents which indicated that the defendants acted in concert in securing patent licenses in an attempt to control prices. In response, the defendants testified that they did not secure patent licenses in concert. *Id*. at 395-96.

Based on the defendant's oral testimony, the district court discounted the business documents and found that the defendants had not engaged in a scheme to secure patent licenses. On appeal, the Supreme Court held that "[w]here