RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0436p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MABEL KAY THOMAS,

      *Plaintiff-Appellant,*

      *v.*

SPEEDWAY SUPERAMERICA, LLC, Agent of RB
Williams,

      *Defendant-Appellee.*

> No. 06-3768

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 04-00147—S. Arthur Spiegel, District Judge.

Argued: March 6, 2007

Decided and Filed: October 30, 2007

Before: BATCHELDER and MOORE, Circuit Judges; MILLS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Tod J. Thompson, FREKING & BETZ, Cincinnati, Ohio, for Appellant. David A. Owen, GREENEBAUM, DOLL & McDONALD, Lexington, Kentucky, for Appellee. **ON BRIEF:** Tod J. Thompson, Randolph H. Freking, FREKING & BETZ, Cincinnati, Ohio, for Appellant. David A. Owen, Anne A. Chestnut, GREENEBAUM, DOLL & McDONALD, Lexington, Kentucky, Craig P. Siegenthaler, GREENEBAUM, DOLL & McDONALD, Louisville, Kentucky, for Appellee.

---

## OPINION

---

    ALICE M. BATCHELDER, Circuit Judge. Plaintiff Mabel Kay Thomas ("Thomas") appeals the district court's grant of summary judgment in favor of Speedway SuperAmerica LLC ("Speedway"), which denied her claims for unpaid overtime wages under both federal and state law. The district court held that Thomas was a bona fide executive employee under 29 U.S.C. § 213(a)(1) and thus not entitled to overtime wages. The narrow issue on appeal is whether Thomas's primary

---

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

duty consisted of management, which is a requirement of the executive-employee exemption. We find that Speedway has satisfied its burden on this issue and **AFFIRM** the district court's judgment.

## I.

Speedway operates a chain of more than six hundred gas station/convenience stores. Speedway's organization is arranged as a corporate hierarchy, with multiple layers of managerial oversight. Each individual station is run and operated by a store manager who is supervised by a district manager. The district managers typically visit each of their stations once or twice a week, but, during busy periods, two weeks might lapse between a district manager's in-person visits. In addition to stringent managerial oversight, Speedway has also adopted detailed company policies and standardized operating procedures, as an additional means of fostering consistency throughout its multi-store organization.

In July 1998, Thomas began working as a store manager for Speedway. Her position as store manager made her the most senior on-site employee and, according to her own testimony, "the person ultimately in charge of [her] store." Speedway expected Thomas to work at least fifty hours per week, but she often worked much more than that, and always remained on call — "24 hours a day, seven days a week." In return for these long hours, Thomas earned a base salary of $522 per week and additional compensation under the store manager bonus program, which paid her up to five percent of the gross profit margin on the sale of certain products in her store (up to a maximum of $2,500 each month).

Thomas spent approximately sixty percent of her work time performing non-managerial tasks, such as stocking merchandise, sweeping floors, cleaning bathrooms, operating the register, and performing routine clerical duties. Even though Thomas devoted a majority of her time to non-managerial activities, she testified that her "primary duty was to manage [her] store," which required her to perform many management functions. She supervised, interviewed, hired, trained, and disciplined employees; she prepared weekly work schedule for her employees; she resolved employee complaints; she monitored her employees' performance with formal evaluations; she recommended salary or merit increases for her employees (most of which were accepted by her district manager); she frequently recommended employee terminations to her district manager; and she even terminated some employees without prior approval from her district manager (although she would later notify her district manager of these unilateral termination decisions).

In August 2003, Speedway terminated Thomas, and six months later, she filed suit against Speedway, asserting (1) failure to pay overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, (2) failure to pay overtime wages under Ohio Rev. Code § 4111.03, (3) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and (4) wrongful discharge in violation of Ohio public policy. Thomas brought the FLSA overtime claim as a "collective action" pursuant to 29 U.S.C. § 216(b) and the state overtime claim as a "class action" pursuant to Fed. R. Civ. P. 23. More than a year after filing suit, Thomas moved the court for an order designating the FLSA claim as a collective action and certifying the state overtime claim as a class action. The district court conditionally certified the class/collective action, defining the class to include: "Any and all present and former employees classified by [Speedway] as "Store Managers" who worked at Speedway . . . at any time from February 19, 2001[,] to the present who worked hours in excess of forty per week and were not compensated appropriately."

In the meantime, Speedway filed a motion for summary judgment on the overtime claims and a separate motion for summary judgment on Thomas's ADEA and wrongful discharge claims. While waiting for the district court to rule on Speedway's summary judgment motions, Thomas filed a motion for leave to file an amended complaint, seeking to add twenty-eight representative plaintiffs to the overtime claim, all of whom were store managers at various Speedway stations

during the relevant time period.  The district court did not rule on Thomas's motion for leave to file an amended complaint but, instead, granted both of Speedway's motions for summary judgment and dismissed all of Thomas's claims.

On appeal, Thomas asserts that the district court erred in granting summary judgment to Speedway on the federal and state overtime claims.[1]  She does not, however, challenge the court's dismissal of her age discrimination or wrongful discharge claims; thus we do not consider them.

## II.

"We review a grant of summary judgment *de novo*, applying the same test as used by the district court." *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1153 (6th Cir. 1995).  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In reviewing a motion for summary judgment, we view the evidence, all facts, and any inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact." *Prebilich-Holland v. Gaylord Entm't Co.*, 297 F.3d 438, 442 (6th Cir. 2002).  A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

At the outset, we acknowledge that the district court conditionally certified Thomas's federal overtime claim as a collective action under 29 U.S.C. § 216(b) and her state overtime claim as a class action under Fed. R. Civ. P. 23.  "FLSA collective actions require potential class members to notify the court of their desire to opt in to the action"; in contrast, class actions governed by Fed. R. Civ. P. 23 require "potential class members . . . to opt out of the action." *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 950 n.3 (11th Cir. 2007); *see also Hunter v. Sprint Corp.*, 346 F. Supp 2d 113, 117 (D. D.C. 2004).  The district court dismissed Thomas's claims prior to issuing notice to the conditionally certified class members or presenting them with the opportunity to opt-in (pursuant to 29 U.S.C. § 216(b)) or opt-out (pursuant to Fed. R. Civ. P. 23).  We thus conclude that our resolution of this appeal binds only Thomas and does not have a directly preclusive effect on any of the members of the conditionally certified class.

Even though Thomas asserts an overtime claim under both federal and state law, we need consider only federal law on this issue, as the Ohio statute expressly incorporates the standards and principles found in the FLSA. *See* Ohio Rev. Code § 4111.03(A) ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and

---

[1]In addition to her challenge to the district court's grant of summary judgment, Thomas presents a one-paragraph argument contesting the district court's failure to rule on her motion for leave to file an amended complaint. The argument is short, vague, and unsupported by legal authority; it is the epitome of a perfunctory argument, and we need not address it. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (quotation omitted).  In any event, we question what Thomas sought to accomplish by challenging the district court's failure to rule on her motion to amend.  Thomas's proposed amended complaint sought merely to add twenty-eight more representative plaintiffs to her conditionally certified class/collective action overtime claim.  When the district court granted summary judgment, it dismissed the entire proceeding, including the conditionally certified class/collective action claim.  Thus, regardless of whether the district court had granted Thomas's motion for leave to file an amended complaint and allowed her to add more representative plaintiffs, the court's grant of summary judgment still would have dismissed that claim in its entirety. Unless Thomas can establish grounds upon which to reverse the district court's grant of summary judgment — an issue addressed in the body of this opinion — her challenge to the court's failure to rule on her motion to amend, even if successful, would not change the disposition of this action.

subject to the exemptions of . . . the 'Fair Labor Standards Act of 1938'"). The FLSA requires an employer to compensate its employees "at a rate not less than one and one-half times the regular rate" for each hour worked in excess of forty during a workweek. 29 U.S.C. § 207(a)(1). Speedway does not deny that it failed to pay overtime wages to Thomas but, instead, asserts that Thomas was exempt from the overtime pay requirements because she qualified as a "bona fide executive" under 29 U.S.C. § 213(a)(1).

FLSA overtime exemptions are "affirmative defense[s] on which the employer has the burden of proof," *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974), *see also Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997), and those exemptions "are to be narrowly construed against the employers seeking to assert them," *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). In *Ale v. Tennessee Valley Authority*, 269 F.3d 680, 691 n.4 (6th Cir. 2001), we stated that "[t]he defendant must establish through 'clear and affirmative evidence' that the employee meets every requirement of an exemption." *Id.* (quoting *Roney v. United States*, 790 F. Supp. 23, 26 (D. D.C. 1992)). Although Thomas contends that Speedway must establish every element of the executive exemption "beyond an issue of material fact,"[2] we have now made it clear that the employer claiming an FLSA exemption does not bear any heightened evidentiary burden. In *Renfro v. Indiana Michigan Power Co.*, 497 F.3d 573, 576 (6th Cir. 2007), we said:

> We clarify here that the phrase "clear and affirmative evidence" does not heighten [the defendant's] evidentiary burden when moving for summary judgment. The word "clear," as used in this phrase, traces to the "clearly erroneous" Rule 52(a) standard, but that standard is inapposite to our current review of a motion for summary judgment. And because establishing the applicability of an FLSA exemption is an affirmative defense, [the defendant] has the burden to establish the . . . elements by a preponderance of the evidence.

The Secretary of Labor, as directed by statute, has adopted regulations defining a bona fide executive employee. *See* 29 U.S.C. § 213(a)(1) (noting that the term "bona fide executive" will be "defined and delimited from time to time by regulations of the Secretary"). The Secretary amended her regulations in 2004, but Speedway discharged Thomas in August 2003, prior to the adoption of the amended regulations. We therefore apply the former regulations, which were in force while Thomas still worked for Speedway. The former regulations included a "long test," which applied to all employees earning at least $155 per week, and a less stringent "short test," which applied only to employees earning at least $250 per week. Because Thomas earned a base salary of $522 per week, we will apply the short test to determine whether she was a bona fide executive employee. An employee qualifies for the executive exemption under the short test if: (1) her "primary duty consists of the management of the enterprise" and (2) her primary duty "includes the customary and regular direction of the work of two or more other employees," 29 C.F.R. § 541.119(a) (2003); 29 C.F.R. § 541.1(f) (2003); *see also Ale*, 269 F.3d at 683-84.[3] Thomas testified that, as a store

---

[2] Thomas is apparently attempting to transform Fed. R. Civ. P. 56(c)'s summary judgment requirement that there be "no genuine issue as to any material fact" into a heightened burden on Speedway. We do not know what proof "beyond an issue of material fact" means, but this heightened burden has no foundation in law. Speedway's burden is that which we impose on all defendants attempting to establish an affirmative defense on summary judgment: it must demonstrate "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The material facts are undisputed; therefore whether Speedway is entitled to summary judgment depends upon whether the undisputed facts demonstrate that Speedway is entitled to judgment as a matter of law.

[3] The current regulations, which were enacted in 2004, have eliminated the distinction between the short and long test. The lone test in the current regulations mirrors the short test in the former regulations, albeit with a higher weekly salary and an additional element. The current regulations provide that an employee qualifies as a bona fide executive if: (1) she is "[c]ompensated on a salary basis at a rate of not less than $455 per week"; (2) her "primary duty

manager, she regularly supervised two or more employees; she thus satisfies one prong of the short test. Whether she qualifies for the executive exemption depends entirely upon our assessment of the other prong.

The issue before this court, then, is whether Thomas — an individual store manager in a chain retail operation — had management as her primary duty. Numerous courts have addressed this issue in factually similar cases, and all have held that the plaintiff's primary duty consisted of management. *See, e.g.*, *Donovan v. Burger King Corp. (Burger King I)*, 672 F.2d 221, 226-27 (1st Cir. 1982) (holding that "Burger King assistant managers have management as their primary duty"); *Donovan v. Burger King Corp. (Burger King II)*, 675 F.2d 516, 520-22 (2d Cir. 1982) (holding that Burger King assistant managers "have, as their 'primary duty,' managerial responsibilities"); *Murray v. Stuckey's Inc. (Murray I)*, 939 F.2d 614, 617-20 (8th Cir. 1991) (holding that the store manager of "an isolated gasoline station, convenience store[,] and restaurant[] had management as his or her primary duty"); *Sturm v. TOC Retail, Inc.*, 864 F. Supp. 1346, 1352-53 (M.D. Ga. 1994) (finding that the managers of a convenience store had management as their primary duty); *Horne v. Crown Cent. Petroleum, Inc.*, 775 F. Supp. 189, 190-91 (D. S.C. 1991) (finding that a manager of a convenience store had "management of her store" as her "primary duty"); *Moore v. Tractor Supply Co.*, 352 F. Supp 2d 1268, 1279 (S.D. Fla. 2004) (finding that a manager of a retail store had management as his primary duty). We find these cases to be persuasive and rely upon much of their reasoning throughout our analysis.

Thomas cautions that these cases, beginning with *Burger King I*, 672 F.2d at 226-27, are in tension with our circuit's precedent. She argues that these cases rely upon the proposition that "the person 'in charge' of a store has management as [her] primary duty," *id.* at 227; *see also Sturm*, 864 F. Supp. at 1353 (noting that "in most cases" the primary duty inquiry can be resolved "by simply deciding if the employee was 'in charge'"), and that our circuit has implicitly rejected and explicitly distinguished the "in charge test." Assuming, without deciding, that these cases in fact *rely* upon this "in charge" reasoning, we find that such analysis is not at odds with our case law. In *Ale*, 269 F.3d at 691, we stated that "[t]he words 'in charge' are not a magical incantation that render an employee a bona fide executive regardless of [her] actual duties." *Id.* We stressed that courts cannot rely upon the plaintiff's or the employer's *description* of the plaintiff's position or authority; instead we must "look at the plaintiff's *actual duties*" to determine whether she qualifies for the executive exemption. *Id.* at 692 (emphasis added). Our discussion in *Ale* thus left open the possibility that an employee whose actual duties demonstrate that she is "in charge" of a store could be said to have management as her primary duty. Accordingly, we find no conflict between the line of cases beginning with *Burger King I* and our decision in *Ale*, and we will rely upon these cases throughout our analysis.[4] *Ale* instructs us, however, that in deciding whether Thomas's primary duty consisted of management, we cannot rely solely upon Thomas's statements that she was "the person ultimately in charge of [her] store" and that her "primary duty was to manage," *id.*; we must instead evaluate her actual job duties.

---

is management of the enterprise in which [she] is employed or of a customarily recognized department or subdivision thereof"; (3) she "customarily and regularly directs the work of two or more other employees"; and (4) she "has the authority to hire or fire other employees," or her "suggestions and recommendations as to the hiring, firing, advancement, promotion[,] or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a) (2007).

[4] We do not adopt a rule that any employee who is in charge of a store has management as her primary duty; we merely conclude that other cases stating as much do not conflict with our precedent. When a court is asked to consider whether an employee's primary duty consists of management, the proper analytical approach is to scrutinize the factors in the Secretary's regulations, not simply to determine whether the employee was "in charge."

The Secretary's former regulations provide detailed guidance to aid in our interpretation of the terms "management" and "primary duty."[5] "Management" includes:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.

29 C.F.R. § 541.102(b) (2003). "A determination of whether an employee has management as [her] primary duty must be based on all the facts in a particular case." 29 C.F.R. § 541.103 (2003). "Primary duty" does not mean the most time-consuming duty; it instead connotes the "principal" or "chief" — meaning the most important — duty performed by the employee. *Burger King I*, 672 F.2d at 226. *Compare* 29 C.F.R. § 541.103 (2003) ("[P]rimary duty means the major part, or over 50 percent, of the employee's time"), *with* 29 C.F.R. § 541.700(a) (2007) ("'[P]rimary duty' means the principal, main, major[,] or most important duty that the employee performs").

Nevertheless, "[t]he amount of time spent in performance of . . . managerial duties is a useful guide in determining whether management is the primary duty of an employee." 29 C.F.R. § 541.103 (2003). Thomas argues that her primary duty does not consist of management because she spent just forty percent of her time engaged in management-related activities. We first recognize, as emphasized in the Secretary's regulations, that "[t]ime alone . . . is not the sole test." 29 C.F.R. § 541.103 (2003); *see* 29 C.F.R. § 541.700(b) (2007); *Burger King II*, 675 F.2d at 521; *Murray I*, 939 F.2d at 618 (stating that "[t]he district court's finding that the managers spent 65-90 percent of their time on non-managerial duties . . . is not a controlling factor under the regulations"); *Moore*, 352 F. Supp 2d at 1274-75 (collecting cases). More importantly, however, the time factor is less momentous, and might even be "somewhat misleading," where "the employee's management and non-management functions are [not] . . . clearly severable." *Burger King I*, 672 F.2d at 226; *see Horne*, 775 F. Supp. at 190. Thomas testified that her non-managerial duties, such as operating the cash register and stocking the shelves, often overlapped with her managerial duties. Under these circumstances — where an employee "manage[s] while at the same time performing non-exempt tasks normally assigned to [subordinate employees]," *see Sturm*, 864 F. Supp. at 1352 — we refuse to give undue weight to the time factor of the "primary duty" inquiry, *see* 29 C.F.R. § 541.103 (2003) (stating that an employee whose work requires her to simultaneously engage in managerial and non-managerial duties "will be considered to have management as [her] primary duty" even though she "generally spends more than 50 percent of [her] time in production . . . work").

"[I]n situations where the employee does not spend over 50 percent of [her] time in managerial duties, [she] might nevertheless have management as [her] primary duty if the other

---

[5] The current regulations also offer guidance to courts construing the terms "management," *see* 29 C.F.R. § 541.102 (2007), and "primary duty," *see* 29 C.F.R. § 541.700 (2007). The new regulations defining these terms are similar, although not entirely identical, to the former regulations. *Compare* 29 C.F.R. § 541.102 (2003) (former regulation discussing "management"), *and* 29 C.F.R. § 541.103 (2003) (former regulation discussing "primary duty"), *with* 29 C.F.R. § 541.102 (2007) (new regulation discussing "management"), *and* 29 C.F.R. § 541.700 (2007) (new regulation discussing "primary duty"). Because the current and former regulations are so similar, our resolution of this case under the former regulations provides guidance to courts performing the "primary duty" analysis under the current regulations.

pertinent [factors] support such a conclusion." 29 C.F.R. § 541.103 (2003). These factors include: (1) "the relative importance of the managerial duties as compared with other types of duties"; (2) "the frequency with which the employee exercises discretionary powers"; (3) "[the employee's] relative freedom from supervision"; and (4) "the relationship between [the employee's] salary and the wages paid other employees for the kind of nonexempt work performed by [her]." *Id.* The district court proceeded through a methodical analysis of these four "primary duty" factors and found that each factor weighed in favor of a finding that Thomas's primary duty consisted of management. On appeal, Thomas challenges the district court's conclusions on each of these factors.[6]

The first factor considers "the relative importance of the managerial duties as compared with other types of duties." Under this factor, courts must compare the importance of the plaintiff's managerial duties with the importance of her non-managerial duties, keeping in mind the end goal of achieving the overall success of the company. *See Burger King II*, 675 F.2d at 521 (noting that this factor requires a consideration of which responsibilities are more "important or critical to the success of the [business]"). Thomas completely misunderstands this factor, arguing at one point that the subordinate, nonexempt employees were more critical to Speedway's success than the store managers. This assertion, even if it were true, completely misses the focus of the first factor by improperly considering who is more important, rather than which category of job duties is more important. Under a proper analysis of this factor, we consider Thomas's non-managerial duties on the one hand, which include stocking merchandise, sweeping floors, and cleaning bathrooms. And, on the other hand, we consider Thomas's managerial duties, which include hiring employees, training employees, and assigning the weekly work schedule. If Thomas failed to perform her non-managerial duties, her Speedway station would still function, albeit much less effectively. After all, most of us — even if unwillingly— have visited and spent our money at filthy gas stations with sparsely stocked shelves. If, however, Thomas failed to perform her managerial duties, her Speedway station would not function at all because no one else would perform these essential tasks. Surely, a gas station cannot operate if it has not hired any employees, has not scheduled any employees to work, or has not trained its employees on rudimentary procedures such as operating the register. We therefore conclude that Thomas's managerial duties were much more important to Speedway's success than her non-managerial duties. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1114-15 (9th Cir. 2001) (holding that managers of recreational-vehicle park were executive employees exempt from the FLSA and noting that the plaintiffs' "principal value to Trailer Inns was directing the day-to-day operations of the park even though they performed a substantial amount of manual labor"). Accordingly, we find that the first factor strongly indicates that Thomas's primary duty consisted of management.

The second factor examines "the frequency with which the employee exercises discretionary powers."[7] The plain language of this factor instructs courts to focus merely on the prevalence or regularity of the plaintiff's discretionary decisions, but we note that the employee's exercise of discretion over matters of importance strengthens the employer's showing under the second factor.

---

[6]Thomas repeatedly asserts that Speedway has the burden of establishing each element of the executive exemption. *See Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512, 515 (6th Cir. 2004). Even though this is a correct statement of law, we stress that this burden applies to every *element* of the exemption, not every factor under every element. At issue in this case is the primary duty element and Speedway needs to carry its burden only on the primary-duty element as a whole, not on each individual factor relevant to that inquiry.

[7]Thomas incorrectly asserts that this second factor requires that the employee "exercise discretion frequently and regularly." Thomas mistakenly incorporates the standard required under the "long test" of the former regulations, which states that an employee qualifies for the executive exemption only if she "customarily and regularly exercises discretionary power." 29 C.F.R. § 541.1(d) (2003). Because we are construing the four "primary duty" factors in the context of the "short test," and not applying the "long test" of the former regulations, we need not impose the heightened standard proffered by Thomas.

*Cf.* 29 C.F.R. § 541.207(a) (2003) (discussing the meaning of "discretion and independent judgment" as used in the administrative exemption, and stating that this phrase "implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and *with respect to matters of significance*") (emphasis added); 29 C.F.R. § 541.202(a) (2007). Thomas argues that she did not frequently exercise discretion because her district manager, Tony Beatty, "visited her store at least twice every week" and maintained constant "supervisory authority over [her] store [twenty-four] hours a day, every day, via telephone and e-mail." Even viewing the facts in the light most favorable to Thomas, we find that she misrepresents the extent of Beatty's supervision. Beatty first testified regarding the consistency and frequency of his in-person visits, stating that he "tr[ied] to get in all [his] stores at least twice a week," but candidly acknowledging that "[m]aybe [he would] . . . miss a store for two weeks." Contrary to her argument on appeal, Thomas testified that Beatty visited only once a week and that he generally adopted a hands-off approach to supervising her station so long as it was returning profitable sales figures and operating without incident. Beatty also testified concerning his telephone and email communications with his store managers, noting that store managers could "pick up the phone and call [him] 24 hours a day, seven days a week," and stating that he received "40 to 60 e-mails a day," some of which were from his store managers. This testimony indicates that Beatty remained constantly available to his store managers, but in no way implies that he maintained constant contact with or supervision over his store managers via telecommunications. And nothing in Thomas's testimony is to the contrary. Accordingly, we need not accept, even under our mandate to view the facts in the light most favorable to the plaintiff, Thomas's depiction of an omnipresent and omnipotent district manager. *See Moore*, 352 F. Supp 2d at 1277-78 ("The record dispels [p]laintiff's argument that he was subject to exacting supervision. Plaintiff's district managers visited the store approximately once a week for a 'walk thru,' and any other communication [p]laintiff had with his district managers was via telephone or email").

In addition to rejecting Thomas's characterization of the facts, we acknowledge, as a matter of law, that "active supervision and periodic visits by a [district] manager do not eliminate the day-to-day discretion of the on-site store manager." *Murray v. Stuckey's Inc. (Murray II)*, 50 F.3d 564, 570 (8th Cir. 1995). Even though Thomas's discretion was somewhat circumscribed by her district manager's supervision and Speedway's standardized operating procedures, she *daily* exercised discretion over matters vital to the success of her station. *See Murray I*, 939 F.2d at 619 ("[T]he manager of a local store in a modern multi-store organization has management as his or her primary duty even though the discretion usually associated with management may be limited by the company's desire for standardization and uniformity"); *Murray II*, 50 F.3d at 570 (recognizing that "standardized procedures and policies" "may circumscribe but [they do] not eliminate the discretion of the on-site manager of an isolated store who is responsible for day-to-day operations"); *Burger King II*, 675 F.2d at 521-22 (noting that the employee "exercise[d] . . . discretion . . . even where circumscribed by prior instruction"). Thomas interviewed and hired employees, delegated work among her employees, resolved employee complaints, determined the weekly work schedule, decided whether to grant vacation requests submitted by her employees, evaluated her employees' performance, decided whether to order additional inventory during periods of high demand, and periodically resolved safety issues at her station. While her discretion was by no means unfettered and abounding, she exercised discretion over important managerial functions on a sufficiently frequent basis to support a finding that management was her primary duty.

The third factor considers the employee's "relative freedom from supervision." Thomas was the most senior employee at her station; no other on-site employee was her equal. Thus, on a day-to-day basis, she generally operated without a supervisor looking over her shoulder, monitoring her every move. In an attempt to undermine the obvious degree of autonomy inherently associated with being the most senior on-site employee, Thomas argues that she was not free from supervision because her district manager constantly monitored her job performance, both in person and by means of telecommunications. We have already rejected Thomas's attempt to characterize Beatty's

oversight as consistent, meticulous, and overbearing. The record indicates that Beatty visited Thomas's store approximately once or twice a week, communicated with Thomas frequently via phone and email, and remained constantly available to address her concerns. While these facts establish that Thomas was not completely free from oversight, we reiterate that the third factor considers only the "*relative* freedom from supervision"; it does not demand complete freedom from supervision, such that she is answerable to no one, as this would disqualify all but the chief executive officer from satisfying this factor of the primary duty inquiry.

A "local store manager's job is [no] less managerial for FLSA purposes simply because . . . she has an active [district manager]." *Murray I*, 939 F.2d at 619. None of Beatty's various forms of oversight or assistance — weekly visits, frequent calls and emails, or constant availability — demonstrate that Thomas did not have "relative freedom from supervision." A district manager's periodic visits, as often as a few days each week, do not negate a finding that the store manager operates free from supervision when the district manager is absent. *See Horne*, 775 F. Supp. at 191 (finding that a store manager "was relatively free from direct supervision" where her "supervisor came by her store only a few times a week"); *Murray I*, 939 F.2d at 619 ("The mere fact that a [district] supervisor comes in for a one- or two-day visit does not destroy the [store manager's] sole charge status . . . during the intervals when the superior is absent"). Neither does a store manager's frequent, even daily, exchange of email and phone communications with her district manager compel a finding that the store manager is subject to "exacting supervision." *See Moore*, 352 F. Supp 2d at 1277-78 (finding that a store manager was not "subject to exacting supervision" where his "district managers visited the store approximately once a week for a 'walk thru,'" and where "any other communication [p]laintiff had with his district managers was via telephone or email").

Furthermore, the level of supervision by Thomas's district manager in this case differs significantly from that in cases in which courts have found that retail store managers were not exempt executives under the FLSA. *Compare Smith v. Heartland Auto. Servs., Inc.*, 418 F. Supp. 2d 1129, 1137 (D. Minn. 2006) (denying defendant's motion for summary judgment regarding executive exemption for Jiffy Lube store managers where the company's District Managers "were at the stores almost every day of the week for hours at a time") *and Cowan v. Treetop Enters., Inc.*, 120 F. Supp. 2d 672, 675 (M.D. Tenn 1999) (granting plaintiffs' motion for summary judgment and finding that plaintiffs were not exempt executives where Waffle House restaurant unit managers "report[ed] directly to a district manager who usually has responsibility for *three* restaurant units in a defined geographical area") (emphasis added) *with Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1304 (S.D. Fla. 2006) (distinguishing *Cowan* and granting summary judgment to defendant, a retail pharmacy chain, where its district managers "supervised over 25 stores at any given time") *and Light v. MAPCO Petroleum, Inc.*, No. 3:04-0460, 2005 WL 1868766, at *9 (M.D. Tenn. Aug 4, 2005) (granting summary judgment to defendant where plaintiff managed a gas station and the district manager "supervised an average of twelve different stores at a time"). Given that Thomas herself testified in her deposition that her district manager supervised ten to twelve stores, the weight of the case law confirms that she was relatively free from supervision in her management of her store. Finally, the district manager's availability "by phone does not detract in any substantial way" from a finding that the store manager was relatively free from supervision. *Burger King II*, 675 F.2d at 522. "Being available for advice is in no sense the exercise of supervision." *Id.* In short, despite Beatty's involvement and monitoring as district manager, Thomas operated free from direct over-the-shoulder oversight on a day-to-day basis, and we conclude that this relative freedom from supervision was sufficient enough to support a finding that her primary duty was management.

The fourth factor contemplates "the relationship between [the employee's] salary and the wages paid other employees for the kind of nonexempt work performed by [her]." At the time of her termination, Thomas earned $522 per week, and, assuming she worked an average of fifty hours per week, her weekly salary equaled $10.44 per hour. There are many variables that might affect this estimated hourly rate. For example, Thomas testified that she often worked much more than

fifty hours per week, which would decrease her hourly earnings. On the other hand, Thomas was eligible to participate in the store manager bonus program, which enabled her to earn a percentage of the gross profit margin from certain products sold in her store, up to a maximum of $2500 each month, which roughly equals a maximum of $600 each week. This money earned under the store manager bonus program would significantly increase her hourly earnings. Due to these indeterminate variables, and in the absence of evidence to support some different estimate, we will assume that our initial figure was the best estimate, i.e., that Thomas's hourly earning was approximately $10.44. Surprisingly, neither party has established the hourly wage paid to the subordinate employees, although Thomas alleges, and we will assume, that it was around $7.00 per hour. Given these figures, we conclude that Thomas's salary equated to a significant amount — approximately thirty percent — more than the hourly wages paid to other employees for the kind of nonexempt work performed by her. *See Moore*, 352 F. Supp 2d at 1278 (stating that the fourth factor has been found to weigh in favor of the employer where the plaintiff's "salary was 42 percent higher than the weekly salary of the highest paid associate").

Thomas argues that the relevant inquiry under the fourth factor is to compare the amount Speedway paid to her for her overtime hours versus the amount Speedway paid to her subordinates for their overtime hours. She reasons that because she was a salaried employee, she was not paid anything for her overtime, whereas her employees were paid upwards of $10.00 per hours for theirs. Putting aside Thomas's questionable calculation of her overtime earnings, we think that she seriously misapprehends the inquiry demanded by the fourth element. That element inquires into "the relationship between [the plaintiff's] *salary* and the wages paid other employees for the kind of nonexempt work performed by [her]"; it does not confine its inquiry to, or otherwise mention, overtime earnings or wages, and Thomas's argument — by focusing as it does entirely on overtime earnings — is unpersuasive. Indeed, the record in this case discloses that Thomas grossed approximately $21,947 in her final seven-month period of employment and that the next highest grossing employee at that location earned approximately $13,943 during the same period. We conclude that the fourth factor, like the other three, weighs in favor of a finding that management was Thomas's primary duty.

Speedway, in particular, has established that each of the four factors supports its position and, in general, has produced abundant evidence indicating that Thomas's primary duty was management. We thus conclude that Speedway has satisfied its burden on summary judgment of demonstrating that Thomas qualified as a bona fide executive employee under the FLSA.

### III.

We accordingly **AFFIRM** the district court's grant of summary judgment in favor of Speedway.