NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0207n.06
No. 13-2722

FILED
Mar 13, 2015
DEBORAH S. HUNT, Clerk

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

GET BACK UP, INC.,                                )
                                                  )
    Plaintiff-Appellant,                     )
                                                  )
v.                                                )     ON APPEAL FROM THE
                                                  )     UNITED STATES DISTRICT
CITY OF DETROIT; CITY OF DETROIT BOARD            )     COURT FOR THE EASTERN
OF ZONING APPEALS,                                )     DISTRICT OF MICHIGAN
                                                  )
    Defendants-Appellees.                     )
                                                  )


BEFORE:     BATCHELDER and ROGERS, Circuit Judges; BECKWITH, District Judge.[*]

PER CURIAM. This case is about whether a city zoning ordinance violates federal antidiscrimination laws when it requires a residential facility for the treatment of substance abuse to obtain a conditional use permit to operate in a business district. Get Back Up, Inc., operates a residential substance abuse treatment facility in the City of Detroit. After two public hearings regarding Get Back Up's conditional use permit application, the City's Board of Zoning Appeals denied Get Back Up a permit to operate its facility in an area of the City zoned for general business use. After its administrative appeals in the Michigan state courts failed, Get Back Up filed suit in federal court, alleging that the ordinance was invalid facially and as applied under the Americans with Disabilities Act, the Rehabilitation Act, and the Fair Housing Act. Get Back Up also alleged that the ordinance was void for vagueness. The ordinance is not facially invalid

---

[*]The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

under the relevant statutes, and is not unconstitutionally vague. Other arguments are not adequately raised and affirmance is therefore required.

Get Back Up operates a 160-bed all-male residential facility in downtown Detroit, providing substance abuse treatment and counseling, education, and job training opportunities.[1] In August 2007, Get Back Up purchased an unused school building from Detroit Public Schools for approximately $500,000. The building is located in a zoning district labeled B4-H, General Business/Residential Historic.

Detroit's zoning ordinance generally identifies uses of property within each type of zone by classifying them as "by right," prohibited altogether, or permitted if certain conditions are satisfied. By right uses do not need permission from the City, subject to some exceptions for site plan reviews and some parking requirements. Conditional uses must first obtain permission from the City before operating. As described by Section 61-3-201 of the zoning ordinance, conditional uses "because of their unique characteristics, cannot be properly classified in any particular district or districts without consideration, in each case, of the impact of those uses upon neighboring uses. Review of dimensional requirements, location, construction, development, and operation of each use is necessary to ensure compatibility with the surrounding neighborhood." Conditional use applications must be reviewed and approved based on fifteen criteria set forth in Section 61-3-231 of the zoning ordinance. Those criteria are:

> (1) The establishment, maintenance, location, and operation of the proposed Conditional Use will not be detrimental to or endanger the social, physical, environmental or economic well being of surrounding neighborhoods, or aggravate any preexisting physical, social or economic deterioration of surrounding neighborhoods; and

> (2) The Conditional Use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes permitted; and

---

[1] At one point in the procedural history, Get Back Up was allowed by the City to operate. Later, the parties stipulated that Get Back Up could continue operating during the pendency of its appeals.

(3) The Conditional Use will not substantially diminish or impair property values within the neighborhood; and

(4) The Conditional Use shall not be inconsistent with the goals and objectives of the City of Detroit Master Plan; and

(5) The establishment of the Conditional Use will not impede the normal and orderly development and improvement of surrounding property for uses permitted in the district. Plans for such development and improvement shall be evidenced in a written or published community plan, development plan, cluster board plan, or similar document; and

(6) Adequate utilities, access roads, drainage, and other necessary facilities have been or will be provided; and

(7) The Conditional Use will be compatible with the capacities of public services and public facilities that are affected by the proposed use; and

(8) The Conditional Use will be compatible with land uses on adjacent and nearby zoning lots in terms of location, size, and character. For purposes of this section, "nearby zoning lots" shall mean those lots on the same side of the same block face as the subject property; and

(9) The Conditional Use will not hinder or have a detrimental effect upon vehicular turning patterns, ingress/egress, traffic flow, nearby intersections, traffic visibility and the clear vision triangle, and other vehicular and pedestrian traffic patterns in the vicinity; and

(10) The Conditional Use will in all other respects conform to ... this Zoning Ordinance. In the event a dimensional or other variance is needed, the [BSE] may approve the Conditional Use contingent on approval of the needed variance from the Board of Zoning Appeals as provided for in Sec. 61-3-219 of this Code; and

(11) The Conditional Use is consistent with any approved preliminary site plan; and

(12) The Conditional Use is so designed, located, planned, and to be operated so that the public health, safety, and welfare will be protected; and

(13) The Conditional Use shall not involve activities . . . or conditions of operation that will be detrimental to the physical environment or to public health and general welfare by reason of excessive production of noise, smoke, fumes, glare, or odors; and

(14) The Conditional Use is consistent with and promotes the intent and purpose of this Chapter; and

(15) Where a public, civic, or institutional use is proposed on land zoned industrial, the impacts of the normal operations that are allowed in the district, including noise, smoke, fumes, glare, and odor, shall not adversely affect the employees, patrons, or users of the proposed public, civic, or institutional facility.

For the B4 general business zone in which Get Back Up's property was located, Section 61-9-73 of the ordinance lists by right uses, grouped by (a) residential use; (b) public, civic, and institutional use; (c) retail, service, and commercial use; manufacturing and industrial use; and (d) "other" uses not included in the first four categories. By right residential uses include boarding schools, child caring institutions, nursing homes, and religious residential facilities. By right public, civic, and institutional uses include adult day care centers, hospitals, libraries, and religious institutions. By right commercial uses include 37 types of businesses, including restaurants, medical clinics, retail stores, and offices. In contrast, Section 61-9-80 identifies conditional residential uses in B4 zones, including a "[r]esidential substance abuse service facility." Other conditional residential uses in B4 zoning districts are a multi-family dwelling, an emergency shelter, a pre-release adjustment center, a fraternity or sorority, and a rooming house.

Get Back Up applied for a conditional use permit for the property in the fall of 2007, and on November 7, the Building Safety and Engineering Department held a public hearing. The City Planning and Development Department initially recommended that the Building Safety and Engineering Department deny the permit, but after Get Back Up submitted additional information, the departments approved the site plan and the conditional use on January 9, 2008, attaching 17 conditions to the permit.

The Russell Woods-Sullivan Area Homeowners' Association, representing the adjoining historical residential district, filed an appeal to the Board of Zoning Appeals. The Board of

Zoning Appeals held a hearing and voted to reverse the Building Safety and Engineering Department's decision granting Get Back Up's conditional use permit.

Get Back Up appealed the Board of Zoning Appeals's decision to the Wayne County Circuit Court as provided by the zoning ordinance. The dispute bounced back and forth between the circuit court and the Board of Zoning Appeals, but the circuit court ultimately upheld the Board of Zoning Appeals's denial of the conditional use permit. Get Back Up's appeals to the Michigan Court of Appeals and the Michigan Supreme Court were unsuccessful.

Get Back Up filed a complaint in federal district court. Count One sought declaratory and injunctive relief under the Americans with Disabilities Act, the Rehabilitation Act, and the Fair Housing Act, alleging that the City's zoning ordinance unlawfully discriminates against substance abuse treatment facilities and is facially invalid. Count Two alleged that the fifteen factor standard for evaluating conditional use applications was unconstitutionally vague. Get Back Up challenged the ordinance as invalid, both facially and as applied to its conditional use application. Get Back Up sought an order invalidating the ordinances as unconstitutional, and enjoining the City from enforcing the Board of Zoning Appeals's decision.

Get Back Up filed a motion for a preliminary injunction. The parties then filed cross-motions for final judgment; Get Back Up sought a permanent injunction and the City filed a combined motion for judgment and response to Get Back Up's motion.

After holding a hearing and allowing Get Back Up to file a supplemental brief, the district court issued its order denying Get Back Up's motion and granting the City's motion. The court reviewed the motions under FRCP 12(c), noting that the "central evidence" before the Board of Zoning Appeals established no material factual dispute because the parties had stipulated to the relevant facts. The court concluded that the zoning ordinance did not

discriminate against the disabled, and was neutral in its treatment of disabled and non-disabled residents. The court discussed reasons that hospitals and nursing homes were materially different from a residential substance abuse service facility, and noted that the ordinance effectively "treats Get Back Up like a standard rooming house." The court rejected Get Back Up's as-applied challenge to the ordinance, finding that the Board of Zoning Appeals had reasons to deny the conditional use permit unrelated to prejudice against the disabled. The court held that Get Back Up's void-for-vagueness challenge to the ordinance failed. Get Back Up claimed that each of the ordinance's conditional use criteria provided no real standards, or at best impermissibly vague standards, to guide the Board of Zoning Appeals in determining whether to grant a conditional use permit. The court cited cases finding that cities have the power to zone in accordance with the "public interest," "public welfare," and to protect the "enjoyment of property," and reasoned that while these are general interests, they were not so vague as to amount to no standard at all.

Get Back Up sought reconsideration under FRCP 59. It argued that the City did not raise the issue that the district court found to be dispositive, "that a [residential substance abuse service facility] should not be classified with other public health facilities." Get Back Up claimed that it was misled by the City's failure to raise the argument, and that it should be permitted to show why a residential substance abuse service facility should be classified and treated as a "public health facility." The district court denied Get Back Up's motion, finding that the briefing merely repeated arguments Get Back Up made in its prior pleadings. It also rejected Get Back Up's assertion that the court relied on arguments that the City did not raise, noting that Get Back Up was asked during the hearing which by right uses were materially similar to Get Back Up's facility, and why they should be treated as such.

Get Back Up appeals the district court's order granting judgment to the City of Detroit, and denying Get Back Up's motion for permanent injunctive relief. Get Back Up also appeals the district court's denial of its motion to reconsider that order. The only arguments that Get Back Up presents on appeal are a facial challenge to the City's not grouping a residential substance abuse service facility with other public health uses, and a void-for-vagueness challenge to the ordinance.[2]

Next, Get Back Up's facial challenge to the zoning ordinance fails because the ordinance does not allow any materially similar use to operate by right in a B4 zoning district. In order to prevail on its Rehabilitation Act, Americans with Disabilities Act, and Fair Housing Act claims, Get Back Up must first show that the ordinance discriminates against the disabled. The City concedes that individuals at residential substance abuse service facilities are handicapped and disabled as defined by federal law. However, the ordinance does not discriminate by requiring Get Back Up to obtain a conditional use permit.

Residential substance abuse service facilities are treated the same as many other residential uses. Residential substance abuse service facilities are allowed to operate in B4 business districts if they obtain a conditional use permit. The same is true for a multi-family dwelling, an emergency shelter, a rooming house, a fraternity or sorority, or a single-family detached or a two-family dwelling, all of which are among the residential conditional uses for a general business district as listed in Section 61-9-80.

Hospitals and nursing homes are not materially similar to residential substance abuse facilities in a B4 zoning district. Get Back Up notes that hospitals and nursing homes may operate by right in B4 zoning districts and argues that this is discriminatory because residential

---

[2] Because, as Get Back Up's counsel conceded at oral argument, Get Back Up did not argue on appeal until its reply brief that the ordinance was invalid as applied, we do not address the as-applied challenge. We generally will not hear issues raised for the first time in a reply brief. *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001).

substance abuse service facilities are identical to hospitals and nursing homes in every respect except one: residential substance abuse service facilities treat recovering addicts and alcoholics. But hospitals and nursing homes differ from residential substance abuse service facilities in multiple respects.

Most obviously, hospitals are not a residential use. Residential and non-residential uses differ widely in how they affect traditional zoning concerns like noise, traffic, parking, and utilities usage. Hospitals are no exception, as they tend to have a substantial impact on the characteristics of their immediate surroundings and the public health of the larger community. Hospitals are well-suited for a busy commercial district like the B4 zoning district, a district described by Section 61-9-71 of the ordinance as "provid[ing] for business and commercial uses of a thoroughfare-oriented nature." These characteristics justify allowing hospitals to operate by right in such districts.

While nursing homes are a residential use, they differ from residential substance abuse service facilities in their impact on traditional zoning concerns and accordingly in their need for a conditional use application. Nursing home residents are often physically disabled and they rarely leave the premises, if ever. *See Drug Abuse Prevention Ctr. v. City of Kelso*, 84 Wash. App. 1044, 1044 (Wash. Ct. App. 1996). As the district court observed, nursing homes are a uniquely sedate and unburdensome use, have relatively little impact on traditional zoning concerns like noise and traffic, and may warrant special treatment on the grounds that a city desperately needs nursing care. Because there are no materially similar uses that may operate by right in a B4 zoning district, the ordinance is not facially discriminatory.

The cases relied upon by Get Back Up are distinguishable. Most involved outright bans. *See MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 345 (6th Cir. 2002); *Bay Area Addiction*

*Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 729 (9th Cir. 1999); cf. *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 304 (3d Cir. 2007) (noting the ban was waivable by majority vote).  It is true that requiring facilities serving the mentally retarded to obtain a conditional use permit while allowing other residential uses to operate by right has been found to be discriminatory in *City of Cleburne v. Cleburne Living Center.*, 473 U.S. 432, 447 (1985).  In that case, though, the Supreme Court declined to rule that such a requirement could never be imposed, even for a residential zoning category.  *Id.*  Instead, the Court looked to the specific categories in the ordinance to conclude that the requirements of the ordinance rested on "irrational prejudice against the mentally retarded."  *Id.* at 450.  And in the other cases cited by Get Back Up, the plaintiffs had direct evidence of discriminatory intent.  *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 307 (3d Cir. 2007); *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 342 (6th Cir. 2002); *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 49 (2d Cir. 1997).

Finally, the ordinance's fifteen standards for approving a conditional use permit are not unconstitutionally vague, as argued by Get Back Up.  Zoning ordinances must be sufficiently clear to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited," and to "provide explicit standards for those who apply them."  *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).  The challenged criteria require the Board of Zoning Appeals to find, for example, that the conditional use will not be "detrimental to or endanger the social, physical, environmental or economic well being of surrounding neighborhoods", that the use will not injure "the use and enjoyment of other property in the immediate vicinity", or that the use will be "compatible" with adjacent land uses.  Beyond a few bare assertions, Get Back Up does not elaborate on how the ordinance is unconstitutionally vague and such perfunctory

arguments are generally deemed waived, *see Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 500 n.1 (6th Cir. 2007). Still, these terms have common-sense meanings and are not so vague in their application that they fail to provide fair notice to applicants or fail to provide standards to guide Board of Zoning Appeals decisions.

Get Back Up cites *HDV-Greektown, LLC v. City of Detroit*, 2007 U.S. Dist. LEXIS 56951 (E.D. Mich., Aug. 6, 2007), where the district court found that the same ordinance was overbroad and unconstitutionally vague, but Get Back Up's citation of *HDV-Greektown* is misplaced because that case involved a First Amendment challenge to a prior restraint on protected expression. Vagueness doctrine applies with special force in the context of prior restraints, where an ordinance must provide "narrow, objective, and definite standards," *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), and Get Back Up makes no argument why *HDV-Greektown* should be applied outside of that context.

For the foregoing reasons, we affirm the judgment of the district court.